## ISRAEL ENNIS v. STATE.

No. A-2427. Opinion Filed September 7, 1917.

(167 Pac. 229.)

1. **DEPOSITIONS—Time for Application—Statute.** Under the provisions of sections 6036, 6037, 6038 and 6039, Rev. Laws 1910, one who is charged with crime has the right to apply to the trial court for permission to take depositions after an issue of fact is joined and not before.

2. **CONTINUANCE—Application—Denial.** When an application for continuance for sufficient time to take the depositions of nonresident witnesses is made in accordance with these provisions, it is error to deny the same if the showing made discloses the materiality of the testimony and the necessity of the same to fairly present the defense of the accused, unless on appeal it appears from the record that the facts sought to be established

were available from other witnesses within the jurisdiction of the court, or that the application was intended merely to delay the proceedings and not in order that justice might be done.

3.    **SAME—Application to Take Depositions—Allowance.** When an application for continuance to take depositions complies in all particulars with the statute and when the showing made clearly entitles the accused to take the depositions and no issue is made by the state that the testimony is not essentially material to the defense of the accused, a postponement or a continuance should be allowed, and proper orders made by the court for the taking of the depositions as provided unless counsel for the state offer to admit that the absent witnesses would testify to the facts set out in the application, and that such application could be read in evidence in lieu of the depositions sought.

4.    **APPEAL AND ERROR—Discretion of Trial Court—Application for Continuance.** Under the doctrine promulgated in this opinion a different state of the case would be presented and a different rule would apply were there any question about the competency of the testimony sought or the good faith of the representations made, or the materiality of the same, as would be the case also if the testimony desired was merely cumulative and other witnesses were within the jurisdiction of the court by whom the facts sought by the depositions could be established. When any issue is made as to these latter propositions, this court will consider all of the record on appeal to determine whether or not there was abuse of discretion upon the part of the trial court on the application for continuance and permission to take depositions under these sections of the statute.

5.    **EMBEZZLEMENT—Larceny—"Larceny by Fraud"—Elements.** To constitute "larceny by fraud" the allegations in the information must set out and the facts disclosed at the trial must show the existence of a fraudulent purpose and intent upon the part of the taker to appropriate the property to his own use and deprive the owner thereof at the time the same comes into his possession, and that fraudulent representations were made to the owner to induce him to part with the possession of the property. If this condition is not shown, but, on the contrary, it appears that the owner parted with the possession of his property and the taker received the same in good faith without any fraudulent intent upon his part to deprive the owner thereof and appropriate the same to his own use, but after receiving the same into his possession, fraudulently converted it to his use and benefit and deprived the owner thereof, the crime would be embezzlement.

6.    **SAME—Appropriation—Intent.** The distinction between larceny, where the taking is by fraud, and embezzlement is determined with reference to the time when the fraudulent intent to convert

the property to the taker's own use occurs. In larceny, the criminal intent must exist at the time of the taking of the property, and it must be taken with intent to deprive the owner thereof at that time. In embezzlement the taker receives the property intending at the time a compliance with the terms of agreement under which it is received, or with the intent to conform to the owner's wishes concerning the property, and after obtaining possession of the same he fraudulently appropriates it to his own use, with intent to deprive the owner thereof.

*Error from District Court, Texas County;*
*R. McMillan, Assigned Judge.*

Israel L. Ennis was convicted of larceny, and he brings error. Reversed, and cause remanded.

*Harris & Breslin, J. P. McLaughlin,* and *S. A. Horton,* for plaintiff in error.

*Jno. B. Harrison,* Asst. Atty Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Israel L. Ennis, was convicted in the district court of Texas county, at the November, 1914, term, on a charge of larceny, and his punishment fixed at imprisonment in the state penitentiary for one year and one day.

Numerous assignments of error are urged in the brief, most of which are based upon propositions that are not likely to arise again should this cause be retried. We find it necessary to discuss only two assignments of error for the purpose of disposing of the present appeal.

The first is set out in the petition in error as assignment No. 6, and is based upon the proposition that the court erred in refusing to grant a continuance for sufficient time to permit counsel for the plaintiff in error to take the depositions of certain nonresident witnesses, and upon the ground that the court refused to permit the taking of these depositions. It appears that the plaintiff in error was brought before the bar of the district court of Texas county

to be arraigned upon the information in this cause; that he filed a demurrer to the information, and at the same time filed an application to disqualify the resident judge. The resident judge, W. C. Crow, certified his disqualification, and Judge R. McMillan was ordered by the Chief Justice to preside at the trial of the cause. Upon the convening of the court with Judge McMillan presiding, the demurrer was heard and by the court overruled. A petition for a change of venue was also heard and overruled, as was a motion to quash the jury panel. A plea of not guilty was entered on the 25th day of November, 1914, and on the same date notice was served upon the county attorney that application would be made to the court to take the depositions of five witnesses who were nonresidents of the State of Oklahoma. The application for continuance, in addition to setting up the grounds upon which it was based, includes a long statement of the plaintiff in error, setting forth the reasons why the testimony of the nonresident witnesses was desired, and detailed facts disclosing the materiality thereof and the necessity of this testimony for his proper defense. The application for continuance and the exhibits are too lengthy to be included in this opinion, and are not necessary for the disposition of the proposition. The application for permission to take the depositions was filed on the same date. This application is supported by affidavits setting forth the facts to which the witnesses are expected to testify in their depositions, and shows that one of these witnesses lived in Cincinnati, Ohio, one in Bucklin, Kan., one in Leavenworth, Kan., one in Kansas City, Mo., one in Little Rock, Ark., and one at Rusk, Tex. The court denied the continuance and the application for permission to take the depositions, and forced the plaintiff in error to immediate trial over his objections and exceptions. The evidence

adduced at the trial emphasizes the necessity and importance of the testimony which the plaintiff in error sought in the application to take the depositions of these witnesses. Section 6036, Rev. Laws 1910, provides:

"When an issue of fact is joined upon an indictment or information, the defendant may have any material witness residing out of the state examined in his behalf as prescribed in this article and not otherwise."

This is the section which gives a person charged with crime the right to take depositions of nonresident witnesses. Section 6037, Rev. Laws, provides:

"When a material witness for the defendant resides out of the state the defendant may apply for an order that the witness be examined on a commission to be issued under the seal of the court, and the signature of the clerk, directed to some party designated as commissioner, authorizing him to examine the witness upon oath or interrogatories annexed thereto, and to take and certify the deposition of the witness and return it according to the instructions given with the commission."

Section 6038 Rev. Laws, 1910, sets forth the manner in which the application for permission to take depositions shall be made, and is as follows:

"Application must be made upon affidavit stating:

"First. The nature of the offense charged.

"Second. The state of the proceedings in the action and that an issue of fact has been joined therein.

"Third. The name of the witness and that his testimony is material to the defense of the action.

"Fourth. That the witness resides out of the state."

Section 6039, Rev. Laws 1910, is as follows:

"The application may be made to the court or judge himself, and must be upon five days' notice to the county attorney."

These sections contain the statute law governing the right of an accused to avail himself of testimony of non-resident witnesses, and the manner in which the same may be lawfully had. Under the provisions of these sections, the accused had no right to apply for permission to take depositions until all demurrers and motions were disposed of and a plea of not guilty entered. The record discloses the fact that the notice to take the depositions was served upon the county attorney upon the same day that the plea of not guilty was entered. It therefore follows that the notice was served upon the earliest possible date after the issue of fact was joined in the case.

The motion for continuance asked, first, that the cause be delayed until the five days had expired within which the notice served upon the county attorney to take the depositions should run. The court indicated that he would not allow this continuance, and thereupon counsel filed the application for the appointment of a commissioner to take depositions, which fully conforms to all the provisions of the statute. The court, therefore, had before it all the matters and things involved in the proposition. The matter was argued pro and con before the court. The county attorney and special counsel declined to waive the five days' notice. Counsel for the accused argued to the court that they were justly entitled to have the five days expire, and upon the showing made justly entitled to the commission to take the depositions, and that the case should be continued until the depositions were made available. Counsel for the state argued to the trial court that the depositions could have been taken at any time after the examining trial was had, and therefore the order prayed for should be denied. The court apparently followed the argument of counsel for

the state, and denied the continuance and the permission to take the depositions.

There was no contention made by counsel for the state at the trial of this cause that the facts set forth in the application for continuance and the application to take the depositions were not founded in truth. There can be no question but that the showing disclosed the essential materiality of the testimony desired. In fact, it tended to establish complete exoneration of the accused upon this charge. The record also discloses that this proceeding was not insituated until more than two years after the date the crime is alleged to have been committed.

Section 6040, Rev. Laws 1910, is as follows:

"If the court or the judge to whom the application is made, is satisfied of the truth of the facts stated and that the examination of the witness is necessary to the attainment of justice, an order must be made that a commission be issued to take his testimony, and the court or judge may insert in the order a direction that the trial be stayed for a specified time reasonably sufficient for the execution of the commission and return thereof, or the case may be continued."

Under this section of the statute it was the duty of the court to grant a continuance of the case and to make necessary orders for the taking of the depositions. His failure to do so was prejudicial error.

In *Smith v. State*, 10 Okla. Cr. 544, 139 Pac. 709, Smith was indicted on a charge of larceny. Within nine days from the date the indictment was filed the case was called for trial. Counsel had applied for subpoenas, and had had them served upon certain witnesses who in the meantime had left the jurisdiction of the court. The application for continuance was based upon the ground that due

diligence had been shown in an effort to secure the attendance of the witnesses, and, since they had left the jurisdiction of the court, sufficient time to take the depositions had not elapsed. The court overruled the motion for continuance, and the trial resulted in a judgment of conviction. Upon appeal the judgment was reversed. In the opinion it is said:

"It is the settled rule in this state that a motion for continuance is addressed to the sound discretion of the trial court under all the circumstances of the case, and its action thereon will not be disturbed, unless an abuse of discretion appears. In the instant case, we think a clear abuse of discretion appears. There can be no question but that the absent testimony as set forth in defendant's affidavit was material and indispensable to his defense, and the evidence adduced on the trial does not render it improbable that it is true. In view of the fact that there was no preliminary complaint filed against defendant, and it appearing that the indictment was not returned until more than eighteen months after the alleged offense was committed, it would seem that defendant was entitled to reasonable time to prepare for trial, and it was error in the court to overrule his motion for a continuance."

In *Hopkins v. State*, 9 Okla. Cr. 104, 130 Pac. 1101, this question was raised on a motion for continuance and overruled by the trial court. Upon appeal the judgment of the trial court was affirmed on the ground that the diligence required by the statute had not been disclosed. In the opinion it is said:

"In the affidavit for continuance the defendant stated that C. R. Long, who resided at Rolfe, Mo., is a material witness, and, if present, would testify that on the day of the killing the defendant was at his own home at the time the killing is alleged to have taken place; that defendant has only been recently released from jail; that he has used every possible effort to locate said witness, and he has only

been able to locate said witness in the past few days; that immediately he caused his attorney to see said witness and he (the said C. R. Long) has promised to be present at the next term of this court and testify and that he believes the testimony so to be given to be true. Evidently the trial court was satisfied that due diligence was not shown, and the absent witness' promise to be present at the next term of court was simply a subterfuge to secure a continuance. If the defendant had exercised due diligence, he could have procured the deposition of this nonresident witness under the provisions of article 17, Procedure Criminal. The application lacks the evidence of good faith, as well as that of due diligence."

The same question was raised in *Owen v. State, ante,* p. 195, 163 Pac. 548. In the opinion it is said:

"When the case was called for trial the defendant filed and presented a motion for continuance based on the absence of material witnesses in his behalf, without whose evidence it is alleged defendant could not safely proceed to trial. His affidavit for continuance contained all the formal allegations required by law, and, among others, the following statements: That Dr. Thos. Shinn, of Yardell, Ark., was acquainted with defendant for many years and acted as his physician when he resided in the State of Arkansas, and, if present, would testify that defendant's mother was subject to fits of melancholia, and that he treated defendant for a form of epilepsy, known in medicine as psychoepilepsy, and that the general effect of such epileptic condition was to weaken the mind, judgment, reason, and the ability to differentiate between what is morally right and what is morally wrong; that Dr. T. J. Shinn of Wagoner, Okla., would testify that defendant was afflicted with said disease, which is a progressive disease of the mind; that Andrew J. Foster of Moodys, Okla., was duly served with a subpœna to appear as a witness, but is now confined to his bed with fever, and is too sick to attend the trial; that, if present, he would testify that he was with defendant in the fall of 1915, near the town of Hulbert, Okla.,

when defendant was attacked by a spell or fit of epilepsy. The application for continuance was overruled, exception allowed, and the trial proceeded.

"Counsel for the defendant contend that: 'The overruling of the motion for a continuance was a denial of defendant's constitutional right to have compulsory process for witnesses in his behalf, and in contravention of defendant's constitutional guaranties within the meaning of our Bill of Rights.' No rule is more firmly established in this state than that this court will not reverse a judgment of the trial court upon the ground that it refused to grant a continuance unless it appears that such court has manifestly abused its discretion in refusing it. However, it is the right of every person accused of crime to have a fair and impartial trial and compulsory process to compel the attendance of his witnesses, and that involves, as a matter of course, the time reasonably necessary to prepare for trial, and to find and produce testimony in his defense. It is not, however, a matter of which the defendant can complain that the trial is speedy, if he has had time for preparation and is ready for his defense. Continuance ought always be granted when, from the showing made justice requires it, this to enable the defendant to procure all legal and competent evidence necessary for the fair presentation of his defense, if he has used due diligence to obtain the same.

"Under our Procedure Criminal the defendant has the right to take the deposition of any material witness residing out of the state, and this only when an issue of fact is joined, upon an indictment or information. Section 6036, Rev. Laws 1910. The application must be made upon affidavit (section 6038, Rev. Laws 1910), and must be upon five days' notice to the county attorney (section 6039, Rev. Laws 1910). It is further provided that upon a motion for continuance on account of the absence of evidence, if the state will consent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, no continuance shall be granted on the ground of the absence of such evidence. Section 5045, Rev. Laws 1910.

"When a defendant desires the testimony of a witness who is a nonresident of the state, and therefore not amenable to the process of the court, he cannot rely upon such nonresidence of his witness as a cause for a continuance, unless he shows that he desires to take the deposition of such nonresident witness. Here the defendant stated in his affidavit that he desired the presence of the nonresident witness. However, technical objections should not ordinarily prevent the granting of a motion for a continuance, if it is necessary to the proper presentation of the defendant's case. And in this case we think the county attorney should have admitted that the witness, if present, would testify as stated in the defendant's affidavit, and that said affidavit might be read and treated as the depositions of the absent witnesses, and, failing to do this, the trial should have been postponed at least ten days."

In the case under consideration, as has been stated, counsel for the accused exhausted all the avenues provided by law for securing the testimony of the absent witnesses, and complied strictly in every respect with the requirements of the statute. No issue was made by counsel for the state as to the sufficiency of the showing. The state stood solely upon the proposition that the depositions could have been taken at any time after the examining trial. As said in the Owen Case, *supra,* these depositions could not be taken until after an issue of fact was joined. It therefore follows that the contention of the state in the trial court that the depositions could be taken at any time after the examining trial is without foundation. The law does not so provide. The trial court was in error in following this line of reasoning. It was his duty to grant the continuance and enter proper orders for the taking of the depositions. His failure so to do under the showing made and under the facts disclosed by the record constitutes reversible error. The county attorney refused to waive anything,

even the five days' notice provided for by the statute. This brings the direct issue before us as to whether or not a person accused of crime can be arbitrarily denied the legal right to secure testimony of nonresident witnesses. Unquestionably the right exists, and it is the duty of this court to uphold the same. A different state of the case would be presented were there any question about the competency of the testimony sought or the good faith of the representations made, or the materiality of the same. A different situation would also be presented if the record before us disclosed that the testimony desired was merely cumulative, and that the plaintiff in error had other witnesses by whom the facts sought to be obtained by the depositions could be established. No issue of this kind having been made at the hearing before the trial court and none being disclosed by the record, there was really no question of discretion arising.

The only other proposition necessary to discuss is based upon the contention that the facts disclosed at the trial do not support the allegations of larceny by fraud, but that instead they establish the crime of embezzlement, if anything. The information charges, or attempts to charge, the defendant and two others with the larceny of broom corn. The facts disclosed indicate that a number of people in Texas county consigned broom corn to the Detroit Broom Corn Company at Kansas City, Mo.; that J. W. Robbertson was the person with whom they dealt and who had charge of the matter. A few of the shippers went to the office of I. L. Ennis in Guymon and inquired of him concerning the company. Some of these witnesses say that he told them the company was all right. Others say that he told them he had a telegram from the company which they ~~uld have if they desired, but none of them asked for

the telegram and none of them saw the same; that Robbertson was to ship the broom corn, sell the same, pay himself the commission agreed upon, and account to them for the remainder of the money. The state brought Robbertson before the court to testify against Ennis, and dismissed this charge against him, and used him as a witness in chief. He testified, among other things, that at the time the broom corn was received and at the time it was shipped away none of the parties charged with this offense had any intention to defraud the owners in any manner; that it was their purpose to ship the broom corn, sell it, and account to the owners for every penny due them. The record further discloses that after the broom corn was shipped to Kansas City, it was reconsigned under the direction of Robbertson and sold, and that the proceeds were received by him and another codefendant and by them embezzled. Robbertson testified that Ennis secured a part of these proceeds. This, Ennis denies, saying that he never received a penny of it and had nothing whatever to do with the transaction.

In order to constitute larceny by fraud the facts must show the existence of the fraudulent purpose and intent at the time the property was received from the owner by the taker. If the property was received from the owner in good faith with the intention existing upon the part of the receiver at the time to handle the same in a lawful manner and account fully for the value thereof to the owner, less the compensation agreed upon, the crime of larceny by fraud would not exist. Under this state of the case, if the property was so received, and by the receiver fraudulently converted, the crime would be embezzlement. Embezzlement differs from larceny in that the original taking of the property was lawful or with the consent of the owner,

while in larceny the felonious intent must have existed at the time of the taking. Sec. 15. Cyc. 488. In *Bivens v. State,* 6 Okla. Cr. 521, 120 Pac. 1033, it is said:

"The distinction between larceny, where the taking is by fraud, and embezzlement is determined with reference to the time when the fraudulent intent to convert the property to the taker's own use occurs. In larceny the criminal intent must exist at the time of taking the property, and it must be taken with intent to deprive another thereof. If, on the other hand, the taker receives the property as a bailment, intending at the time a compliance with the terms of the bailment, or to conform to the owner's wishes concerning the property, and he afterwards fraudulently appropriates the property to his own use, intending to deprive the owner thereof, the crime is embezzlement."

This principle was also laid down in the case of *Flohr et al. v. Territory,* 14 Okla. 477, 78 Pac. 565. A part of the language used above is used in the syllabus of that case, wherein the court said:

"The distinction between larceny, where the taking is fraudulent, and embezzlement is determined with reference to the time when the intent to wrongfully convert the property to the taker's use occurs. If the property in the hands of the taker amounted to a bailment, or if the property went into the possession of the taker with knowledge of the owner on account of any fraudulent representation by the taker, and the taker received the same, intending at the time of its receipt to convert the same to his own use and deprive the owner thereof, the crime is larceny. If, on the other hand, the taker receives the property as a bailment of the same, or with the knowledge and consent of the owner, intending at the time a compliance with the terms of the bailment, or to conform to the owner's wishes concerning the property in his possession, and afterwards converts the property to his own use and fails to account for the same upon demand, the crime is embezzlement."

The proof offered in this case on the part of the state by witnesses, who consigned the broom corn, upon this proposition goes to one point only, and that is, that they inquired of plaintiff in error, Ennis, whether or not the Detroit Broom Corn Company was responsible, and that he replied that it was. No question was asked him concerning the responsibility of Robbertson, who, it seems, had been living in Texas county for many years and had been engaged in the hardware business in Texhoma; nor does there appear to have been any questions asked concerning the responsibility of Rathburn by any of those owning the broom corn involved in the transaction. Some witnesses use the word "reliable." Considering this testimony, together with the testimony of the state's witness. Robbertson, that no purpose existed upon his part, or upon the part of any of his associates, to unlawfully deprive the owners of the broom corn of their property at the time the same was received and shipped, the case falls short of necessary proof to establish larceny by fraud. That there was a crime committed there can be no doubt, but that crime, under the record, was embezzlement and not larceny by fraud.

For the reasons indicated, the judgment of the trial court is reversed, and the cause remanded to the district court of Texas county.

DOYLE, P. J., and MATSON, J., concur.