## C. T. LEE v. STATE.

No. A-5448.    Opinion Filed March 23, 1926.
(244 Pac. 455.)

H. L. Adkins, W. H. Mouser, A. G. T. Vaughn, and Sylvester Grim, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J.   Appellant, C. T. Lee, was prosecuted by information in the district court of Roger Mills county for the murder of J. N. Jackson, alleged to have been committed June 29, 1923, by shooting him with a Winchester rifle.   The cause came on for trial September 2, 1924, and resulted in a conviction of manslaughter in the first degree; the jury fixing the punishment at imprisonment in the penitentiary for a term of four years.   He has appealed from the judgment rendered on the verdict, but there has been no appearance in his behalf on his appeal.   When the case was called for final submission, it was submitted on the record.   The errors assigned are that the verdict is contrary to the law and the evidence; that the court erred in admitting incompetent testimony; that the court erred in refusing to give certain instructions requested by appellant.

It appears that defendant and deceased were neighbors for four or five years in the town of Ham-

mon. On the day of the tragedy defendant found a cow in his alfalfa and took her up. Deceased and his brother, John, went to defendant's house and noticed the cow tied to a wagon on a lot adjoining defendant's house. Deceased opened the gate, went in, unfastened the cow, and was leading her out the gate, when defendant came out of his house, with a Winchester rifle, and shot deceased. The bullet went through the hand of the deceased and through his body, from the effects of which he died the following day.

John Jackson testified that his brother's cow strayed and he went with him to find the cow; that they looked around the cotton gin and then went past defendant's place, and there saw the cow tied to a wagon; that his brother opened the gate, went in, unfastened the cow, and was leading her with a rope five or six feet long; that, as he passed through the gate, defendant came out of his house, and said, "I am going to shoot," and fired the fatal shot.

As a witness in his own behalf, defendant testified: That he had been acquainted with deceased about six years, during which time they lived there in the same community. That he found Jackson's cow in his alfalfa patch and tied her to a wagon standing in his corral. That evening a couple of little boys, sons of deceased, came to his place, and said they wanted the cow, and he told them there was a dollar herd law charge against the cow and soon after the deceased and his brother John came to the lot gate. That he was carrying water and went in the house. That it was then about sundown. That when deceased walked into the lot he said to him, "There is a dollar herd law charge against that cow." The deceased said, "A dollar hell," and walked towards the cow. John Jackson said, "A dollar nothing; God damn you! get yourself in the

house, or we will take you out." That he went into the house and got his gun and came out. Deceased was leading the cow through the gate and John Jackson was holding the gate open. That he started to say, "Don't take that cow until you pay the herd law," and deceased said, "Of course, I will take her," and he put the rope in his left hand and threw his right hand back, then he shot him. John Jackson threw up his hands and deceased took two or three steps forward and sank down. That he fired the shot in his self-defense, believing that deceased was reaching back to get a gun.

The record is voluminous, containing more than 400 pages. However, the foregoing statement we think sufficient.

Our Penal Code provides that homicide is justifiable when committed by any person in resisting any attempt to murder such person or to commit any felony upon him or when committed in the lawful defense of such person, when there is a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished. Section 1754, C. S. 1921.

In order to justify the assault and to slay an assailant, within the meaning of this section, there must be an apparent design on the part of such assailant to either take the life of the person assaulted or the infliction of some great personal injury, and, in addition thereto, there must be reasonable ground for believing that there is imminent danger of such design being accomplished. The use of a deadly weapon is justifiable for the purpose only of preventing an unlawful and violent attack on one's person of such a nature as to produce a reasonable expectation or fear of death or great bodily injury about to be inflicted.

The right to take another's life in self-defense is not to be tested by the honesty or good faith of defendant's belief in the necessity of the killing, but by the fact whether he has reasonable grounds for such belief. While appellant is not represented in this court, we have carefully gone through the record and find it free from substantial error. Under the evidence and according to his own statement on the witness stand, he might well have been convicted of murder, and we think he ought to be thankful that the jury dealt so leniently with him.

The judgment appealed from is affirmed.

BESSEY, P. J., and EDWARDS, J., concur.