## JIM EDGE v. STATE.

No. A-5922.   Opinion Filed Feb. 11, 1928.
(264 Pac. 213.)

John W. Tyree and J. F. Thomas, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J.   Appellant, Jim Edge, was charged by information in the district court of Comanche county with having in said county, on December 24, 1924, killed Carl Smith.   Upon a trial he was convicted of manslaughter in the first degree, and his punishment assessed at imprison-

ment in the penitentiary for a term of four years. **From** the judgment rendered on the verdict he appeals.

No briefs having been filed, the case was submitted on the record.

There is no controversy as to the fact that the defendant killed the deceased by stabbing him with a pocket knife. The scene of the tragedy was just outside the Post-Oak schoolhouse, south of Indiahoma.

The circumstances under which the killing occurred are stated by Robert Jackson, a deputy sheriff, and a brother-in-law of the deceased, who testified as follows:

"Carl's father requested that Carl and I go outside to smoke; We went out and were standing in front of the schoolhouse smoking. My attention was attracted by Mr. Edge or by some man standing about three feet from the door swearing and talking to some ladies standing in the door. I told Carl that I had to go over and stop that swearing around the schoolhouse, I started over to tell Edge he would have to keep quiet or get off the grounds, and some one shoved me. When I got straightened up Carl and Jim Edge were fighting. I got to them as quick as I could, and helped Edge up off the ground. About that time I heard Carl say, 'I believe I have been cut,' and he went in the schoolhouse. I told Edge he would have to get off the grounds. He said, 'All right.' I went in, and some one said Carl has been cut. Then I came out, and told Edge he could not go; that he was under arrest. I took hold of him to search him. He had on an overcoat, and was pulling me towards a bunch of cars, saying that he did not have a knife, and never owned a knife, and he said, 'You can search me now,' and I did. I didn't find a knife on him. He wanted to go back into the schoolhouse; we went in; then came out, and got into a car, and I took him to Chattanooga. I came back to the schoolhouse and I looked where Edge and I had been scuffling, and found a knife on the ground. The knife was shut. I gave the knife to the sheriff."

Linville Smith, brother of the deceased, testified that he was standing outside the schoolhouse when his brother

Carl and Robert Jackson came out. Jim Edge was standing there, and said that he was the toughest son of a bitch on the ground. His wife and mother tried to get him to come into the schoolhouse, and his wife said, "If he didn't shut up cussing, she would go home with him." He said that "no son of a bitch could make him come in" a couple of times, then he struck Carl Smith in the left side, and his brother hit him with his fist, and knocked him down, then turned around, and said he believed he was stabbed; that the age of the deceased was 24 years.

Dr. Broshears testified that the deceased was brought to the Southwestern Hospital at Lawton the night of December 24th. Upon examination they discovered that he was bleeding inside; that the wound was between 4 and 6 inches on the left side, between the eighth and ninth ribs, forward under the arm, and apparently penetrated the diaphragm; that he died the second night following.

For the defense, Bill Epps testified that he was leaning against the wall near the door of the schoolhouse, and heard Mrs. Edge ask her husband to come in and sit down by her; that the defendant acted as if he had been drinking, and said, " I am 31 years old, and ain't afraid of no son of a bitch"; and, when he said that Carl Smith hit him and knocked him down on the ground, that he did not see the defendant strike the deceased.

Appellant's own testimony was that he was standing in front of the door, and some one hit him and knocked him down on his knee; that he looked back, and saw Carl Smith and another fellow approaching, and he jerked out his knife and hit; that he had heard Carl Smith was a dangerous man, and he struck him with his knife because he was afraid he would kill him.

On cross-examination he admitted that he told the witness Jackson when he started to search him that he did not have a knife; that he threw the knife down on the

ground, that the knife offered in evidence was his knife; that he had been drinking some that night; and that he probably said what the witness testified to.

Several witnesses testified that the reputation of the deceased in that community was that of being a quarrelsome and dangerous man.

The defendant makes a general assignment that the verdict is not sustained by sufficient evidence.

Without the aid of oral argument or a brief on the part of the defendant, we have carefully gone through the record and find it free from substantial error. The evidence by the state's witnesses, which was more or less supported by the testimony of others, clearly established the crime of manslaughter in the first degree, at least. The testimony shows that the defendant was more or less under the influence of liquor, and, were it not for that fact, the tragedy would never have occurred.

Assuming that the deceased was the aggressor, the rule is well settled that the bare belief of one assaulted that he is about to suffer death or great personal injury will not in itself justify him in taking the life of his adversary. There must exist reasonable ground for such belief at the time of the killing, and the existence of such ground is a question of fact for the jury.

The instructions to which no objection was made or exception reserved fully and fairly covered the law of the case.

Upon a consideration of the whole case, our conclusion is that the defendant was accorded a fair trial. The judgment of the court below is accordingly affirmed.

EDWARDS and DAVENPORT, JJ., concur.