FRED HOOD v. STATE.

No. A-9709.   Oct. 9, 1940.
(106 P. 2d 271.)

John Howard Payne, of Oklahoma City, for defendant.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for the State.

BAREFOOT, J.  Defendant was charged in Tulsa county with the crime of murder, was tried, convicted of manslaughter in the first degree, and his punishment assessed by the jury at 25 years in the penitentiary; and he has appealed.

In the brief filed by defendant, it is generally contended that this case should be reversed because the defendant did not have a fair and impartial trial, and that if it is not reversed, that the judgment and sentence is excessive under the evidence, and that same should be modified.

Defendant was charged with the murder of Garrett Bailey, who was generally known as Cotton Bailey, at defendant's restaurant and beer parlor, located on North Peoria street in Tulsa, between 11:30 p. m. and 12 o'clock midnight, May 8, 1938.  The evidence reveals that the deceased was a large man, over six feet tall; had been to the penitentiary two or three times for murder and

manslaughter; that he had killed several persons; and that his reputation as a dangerous man when drinking was bad. It is also revealed that defendant had been to the penitentiary twice on a narcotics charge, and once for a violation of the prohibition law.

On the evening of June 8, 1938 deceased came to the place of business of the defendant about 4 o'clock in the afternoon. He inquired of the wife of the defendant, who was in charge at that hour, for defendant, and was informed that he was in the back room asleep and could not be disturbed. He left and returned about 5:30 p. m., and had a conversation with the defendant in front of his place of business; that deceased was drinking heavily at the time and wanted the defendant to go across the street and bring a certain party over to his place of business so that he could whip him. This party had defendant arrested a short while before for the larceny of a jumper. Defendant had assisted him in securing his release in that case; and defendant and deceased had been good friends for many years. The defendant refused to go and get the other party, and told deceased that he could not afford for him to have any trouble at his place of business. Deceased tried to get him to drink some corn liquor which he had, and defendant refused. He saw deceased hide the liquor in some weeds. The defendant finally persuaded deceased to go in his car that was parked in front in the street; he did so, and slept there until about 10:30 p. m., when he awoke again and came into the defendant's place. A number of people were there eating, dancing, and drinking beer.

Without stating too much of the details, deceased was drinking heavily and had trouble with several people who were there. Among them were a brother of defendant and a man by the name of George Williams, who was known

as Wimpy Williams. Some of defendant's patrons started to leave the place by reason of the annoyance of deceased; but defendant saw them and persuaded them to return, stating that he would get the deceased to be quiet; defendant talked to deceased and tried to get him to be quiet and go home. He had stepped out in front of his place of business, and on hearing a conversation returned inside just in time to see Wimpy Williams throw a bottle at deceased; and saw deceased, as he testified, coming toward him with a knife in his hand open; that Wimpy Williams hollered at him, saying, "Freddie, watch out, he has a knife." That he backed back a few feet, and deceased attempted to strike him with a knife; and he shot deceased at that time through the head; that he fell to the floor and was carried out onto the porch, and was afterwards taken in an ambulance to the hospital, where he died in a short time from the effect of the wound inflicted by the shot.

The evidence with reference to deceased having a knife was conflicting. Many of the witnesses testified that he had and that they had seen him with it open in the defendant's place of business several times during the evening that he was there. Others did not see the knife and did not see the deceased attempt to strike defendant at the time the shot was fired.

The evidence was somewhat conflicting. The jury were in a much better position to judge the facts than an appellate court.

When deceased's clothing was searched at the hospital, a small pocket knife was found in his pocket. It was not open. No knife was found at the scene of the difficulty.

It is unnecessary to review the whole of the evidence. Enough has been noted. There were extenuating circum-

stances on the side of the defendant. He exercised all of his power to try and keep the deceased, who was drinking heavily at the time, from creating a disturbance at his place of business. He was not unfriendly to the deceased. As a matter of fact, the evidence reveals that he was not only friendly but was kind to him, and before the killing he had asked Wimpy Williams to leave deceased alone, and that he would take care of him. This he tried to do; but, even though this were true, the defendant did not have the right to take the life of deceased, as revealed by the evidence in this case.

If the jury believed the evidence offered by the state, as they evidently did, they were justified in returning a verdict of guilty against the defendant. The evidence of the state's witnesses was that they did not see deceased make any demonstration towards defendant; that they did not see any knife in his hand; and immediately after the bottle was thrown at the deceased by Wimpy Williams, that defendant fired and deceased fell to the floor; that they were some distance apart at the time the shot was fired. Many of the physical facts corroborate this testimony. No knife was found where deceased fell. He had no opportunity to close it and put it in his pocket after the shot was fired. A closed knife was found in his pocket at the undertaker's. The jury had the right to consider all these facts, and their verdict should not be reversed on the ground that there was insufficient evidence to support it.

The bare belief that one is about to suffer death or great personal injury will not, in itself, justify him in taking the life of his adversary. There must exist reasonable grounds for such belief at the time of the killing, and the existence of such ground is a question for the jury. Fixico v. State, 39 Okla. Cr. 95, 263 P. 171; Edge v. State,

39 Okla. Cr. 277, 264 P. 213; Hunt v. State, 29 Okla. Cr. 255, 233 P. 506.

The right to take another's life in self-defense is not to be tested by the honesty or good faith of the defendant's belief in the necessity of the killing, but by the fact whether he had reasonable grounds for such belief. Lee v. State, 33 Okla. Cr. 370, 244 P. 455.

The contention of defendant that the verdict, under the circumstances and evidence, was excessive, will have to be upheld. While the past records of both the defendant and deceased were bad, yet the evidence in the case reveals that the defendant was at his place of business; and there was no evidence to show that he was in any way conducting it in an unlawful manner. He was friendly with the deceased and had known him for many years. He tried to keep him from disturbing his customers and was very lenient with him. The fact that defendant had been convicted on two prior occasions on a narcotics charge and also once for a violation of the prohibitory law, no doubt, caused the jury to assess the severe penalty that they did.

While we believe the defendant should be punished for the crime committed, it is our opinion that the judgment and sentence should be modified from 25 years in the penitentiary to 12 years.

In the following cases the judgment and sentence has been reduced in cases somewhat similar to the one at bar: Gray v. State, 56 Okla. Cr. 208, 38 P. 2d 967; Seals v. State, 54 Okla. Cr. 204, 16 P. 2d 885; Hollingsworth v. State, 50 Okla. Cr. 164, 297 P. 301; Hogshooter v. State, 50 Okla. Cr. 119, 296 P. 531; Houser v. State, 41 Okla. Cr. 129, 271 P. 857; McJunkins v. State, 35 Okla. Cr. 164, 249 P. 158; Foster v. State, 11 Okla. Cr. 25, 141 P. 449.

We have examined the requested instructions offered by the defendant, and also the instructions given by the

court. We find no error in the court's refusal to give the requested instructions. As a matter of fact, the defense which they presented was covered by the general instructions. We find no error in the general instructions given by the court.

The defendant was given a fair and impartial trial with the exception that the judgment and sentence was excessive. Under the law, the trial court did not have the power to set the verdict of the jury aside except by the granting of a motion for a new trial and this would necessitate the county going to the expense of conducting a new trial. This court, under the law, has that power; and we are of the opinion that justice demands that the judgment and sentence should be reduced as aforesaid.

The record reveals that the defendant made an appeal bond in this case. The district court of Tulsa county is hereby directed to correct its judgment and sentence in accordance with the terms of this opinion.

It is, therefore, ordered that the judgment and sentence of the district court of Tulsa county be modified from a term of 25 years in the penitentiary to a term of 12 years and, as so modified, is affirmed.

DOYLE, P. J., and JONES, J., concur.