# WARREN ABBY v. STATE.

No. A-9817.   June 11, 1941.
(114 P. 2d 499.)

Mitchell & Mitchell, of Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Milton Keen, Co. Atty., of Clinton, for the State.

BAREFOOT, P. J. Defendant Warren Abby was charged in the district court of Custer county with the crime of murder, was tried, convicted and sentenced to be executed, and has appealed.

For reversal of this case it is contended:

First. The court erred in denying the application for a change of venue.

Second. The court erred in overruling plaintiff in error's motion for a continuance.

Third. The court erred in permitting the introduction of incompetent evidence by the state.

Fourth. The court erred in the instructions to the jury in failing to state the law on the defense interposed and on which evidence was offered.

Fifth. The county attorney was guilty of misconduct in the introduction of incompetent evidence on cross-examination and in his argument to the jury.

Sixth. The verdict of the jury was the result of passion and prejudice.

Before reviewing the alleged errors we deem it advisable to give a short, concise statement of the facts as they appear from the 817-page record.

Defendant, Warren Abby, was charged with murdering his wife, Julia Abby, in Custer county, Okla., on the 6th day of October, 1939. A preliminary complaint was filed in the county court of Custer county on the 7th day of October, 1939. An information was filed in the district court on the 11th day of October, 1939, and the defendant was arraigned on the 17th day of October, 1939, and the plea of not guilty entered and the issues settled at that time. The trial was commenced on the 11th day of December, 1939.

The defendant and deceased were residents of the State of Louisiana and were traveling by automobile through Oklahoma to California. The record reveals that defendant was 56 years of age and the deceased, his wife Julia Abby, was 78 years of age. They were secretly married on the 26th day of January, 1936, but did not live together or reveal the same for a period of three years. The defendant remained on his farm in Louisiana and deceased ran her drugstore in Arkansas. They corresponded during this time, and deceased had gone to Louisiana to visit defendant upon several occasions. She had sent him some money from time to time, being the proceeds of the sale of certain property owned by her in Arkansas. The defendant was engaged in a co-operative farming scheme in which he was very much interested and was trying to promote, and there could be little doubt that defendant at the time he married deceased thought she owned considerably more property and of greater value than she did.

In September, 1939, she sold her drugstore in Arkansas for the sum of $1,500, $1,000 in cash and a note for $500, and a part of this money, $533.86, was used to pay off a mortgage on the farm of defendant; $260 was paid in the purchase of an automobile in which a car owned by defendant was used in the exchange. This was the automobile they were driving to California at the time of the killing; $180 was used in purchasing travelers checks in defendant's name to make the trip to California.

Soon after arriving in Louisiana the deceased made a will leaving the balance of her property to the defendant. The defendant at the same time executed a will leaving his property to the deceased. The wills were executed just about a week prior to her death. Defendant and deceased left Louisiana, traveling to Arkansas to see if they could dispose of other property owned by deceased, a part of which has been known as zinc land and which had been discussed as having a value of around $10,000, but when they arrived there they found that it was of little value. They also attempted to cash the $500 note, but did not do so. They proceeded on their way to California, where defendant had formerly lived, and on the evening of October 5th arrived at a tourist camp at Bridgeport, Okla. On the morning of the 6th of October, 1939, they started before daylight toward Clinton on highway No. 66, and the deceased was murdered by defendant by the side of the road about 6 o'clock by striking her on the head and body with an iron rod that had been picked up and placed in the car during the trip. Her body was taken from the automobile and a pool of blood was found near the car where defendant had struck her with the iron bar after being removed therefrom. An examination revealed that she had been struck at least eight different times with the iron bar. After killing deceased, defend-

ant attempted to remove a tire from his car with the thought in mind of making up a story, which he afterwards told the officers and others of Custer county, that she had been killed by a hit-and-run truck driver. He immediately placed her body in the car and drove into a filling station at Clinton, Okla., and asked the attendant for a doctor, telling him that his wife had been struck by a hit-and-run truck driver. He was directed to the hospital, where he took the deceased. His story that she was struck by a hit-and-run truck driver was made to several officers of Custer county.

The officers, upon examination of the car and the location of the blood stains thereon, immediately began an investigation. They proceeded to the place where defendant had told them the accident occurred, and they found there a pool of blood by the side of the road, and about 40 feet northwest from where the car had stopped they found the iron bar with traces of blood and hair thereon. Defendant finally confessed to the officers that his statement was false with reference to her being hit by a hit-and-run truck driver, but that he had struck deceased with the iron bar when she said, "I am going to shoot you." A pistol was afterwards found in the back part of the car, but defendant admitted that it was his and that she did not have it in her possession at the time that the above statement was made. The pistol was found by the officers under some clothing in the back of the car. She was dead before she reached the hospital.

His defense was self-defense and temporary insanity, claiming that after he struck deceased the first blow everything went black and he did not know what he did during the time she was being struck with the iron bar.

The first assignment of error is that the court erred in denying the application for a change of venue. This

was based upon the affidavits of three citizens of Custer county. An elaborate hearing was had by the trial court on this motion, and many affidavits and much evidence was taken at the hearing. The defendant attached three affidavits of citizens of Clinton, Custer county, to his motion, and they were afterwards examined in the presence of the court. The county attorney filed 304 counter affidavits. There were also introduced the clippings of a number of newspapers of Custer county. These newspapers carried stories at the time of the killing. After both sides had introduced much evidence, the court, at the suggestion of the attorney for defendant, on his own responsibility, selected four prominent citizens from different sections of Custer county and had them brought before the court and explained to them that they had been brought in by the court and not as witnesses for either side. They were questioned by the court and also by each of the attorneys. The testimony of each was that in their opinion the defendant could have a fair and impartial trial in Custer county. That there did not exist in the county any prejudice against the defendant. That there had been the usual talk as occurs when some one is killed under such circumstances as this case developed, but at that time there was very little, if any, talk about it. That the fact that neither the defendant nor deceased had ever been residents of Custer county, but were strangers, would in their opinion permit a fair and impartial jury to be secured in the county. The reports from the papers were about the same as generally appear under similar circumstances. In these papers reported statements of the county attorney, officers, and of the defendant himself were all published.

The rule that has been adhered to in this court has been well expressed in the case of Newton v. State, 56 Okla. Cr. 391, 40 P.2d 688, 691, where it is said:

"The presumption is that the defendant can have a fair trial in the county in which the offense was committed and the burden is on a defendant who seeks a change of venue to establish his right thereto. Davis v. State, 53 Okla. Cr. 411, 12 P. 2d 555. In this day of paved highways, the wide use of rural telephones, daily papers, and radios, the mere fact that the inhabitants of a county have read and heard of the commission of a crime does not disqualify them. To warrant a change of venue, it must be made to appear they have a fixed opinion as to the guilt or innocence of an accused to the extent that an accused cannot have a fair trial by an impartial jury."

The statute governing an application for change of venue is Oklahoma Statutes 1931, sec. 2905, 22 O. S. A. § 561. It is unnecessary to quote this statute. It provides the manner of making an application for change of venue and provides that counter affidavits may be filed by the county attorney: "* * * to show that the persons making affidavits in support of the application are not credible persons and that the change is not necessary, and may examine the witnesses in support of said application in open court in regard to the truth of said application * * *."

The above statute has been construed by this court in many cases and it has been the universal holding that the granting of a change of venue is, under the statute, a matter resting within the sound discretion of the trial court, and unless it clearly appears that there is an abuse of such discretion, the decision of the trial court will not be reversed for failure to grant a change of venue. Gentry v. State, 11 Okla. Cr. 355, 146 P. 719; Warren v. State, 24 Okla. Cr. 6, 215 P. 635; Jewell v. State, 41 Okla. Cr. 389, 273 P. 366; Huffman v. State, 28 Okla. Cr. 296, 230 P. 272; Quinn v. State, 54 Okla. Cr. 179, 16 P.2d 591. We are of the opinion that the overruling of the motion for change of venue under the circumstances and evidence

in this case was not error, and there was no abuse of discretion of the court in overruling the same.

The second assignment of error is that the court erred in overruling defendant's motion for a continuance. This contention is based upon the court's ruling in denying an application for appointment of a commissioner to take depositions of nonresident witnesses. As before stated, the defendant was arrested on the 6th day of October, 1939. He was not tried until the 11th day of December, 1939. He was confined in jail during this time, but had employed able counsel, and they had been given the opportunity to confer with him at any time he desired. The proof showed that he had some funds and had obtained other funds from the sale of property which he owned in California in the sum of $1,000 prior to the date of this trial. The issues in this case were settled on the 17th day of October, 1939. The motion for the appointment of a commissioner to take depositions out of the state was not filed until the 5th day of December, 1939, just six days before this case was set for trial. When the motion was presented it set out what each of the witnesses would testify. The county attorney waived the five days' notice provided by the statute and filed a response to the motion to which were attached several affidavits. In this response the county attorney agreed that the motion for continuance could be read to the jury and the statements therein considered as evidence in the case. This was done. Oklahoma Statutes 1931, sec. 397, 12 Okla. St. Ann. § 668. One of the witnesses named was the former wife of defendant who was a resident of the State of California and who appeared at the trial and testified for defendant. The testimony of the other witnesses pertained to matters which did not involve the issue of self-defense or temporary insanity which was urged by de-

fendant. From an examination of the record, we are of the opinion that the court did not err in overruling the motion for a continuance, and there was no abuse of discretion on his part. Hargis v. State, 33 Okla. Cr. 283, 243 P. 986; Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Ennis v. State, 13 Okla. Cr. 675, 167 P. 229, L.R.A. 1918A, 312.

The Owen Case, 13 Okla. Cr. 195, 163 P. 552, states the true rule that has been followed by this court as follows:

"No rule is more firmly established in this state than that this court will not reverse a judgment of the trial court upon the ground that it refused to grant a continuance unless it appears that such court has manifestly abused its discretion in refusing it. However, it is the right of every person accused of crime to have a fair and impartial trial and compulsory process to compel the attendance of his witnesses, and that involves, as a matter of course, the time reasonably necessary to prepare for trial, and to find and produce testimony in his defense. It is not, however, a matter of which the defendant can complain that the trial is speedy, if he has had time for preparation and is ready for his defense. Continuances ought always to be granted when, from the showing made justice requires it, this to enable the defendant to procure all legal and competent evidence necessary for the fair presentation of his defense, if he has used due diligence to obtain the same.

"Under our Procedure Criminal the defendant has the right to take the deposition of any material witness residing out of the state, and this only when an issue of fact is joined upon an indictment or information. Section 6036, Rev. Laws [1910], 22 Okla. St. Ann. § 781. The application must be made upon affidavit (section 6038, Rev. Laws [1910], 22 Okla. St. Ann. § 783), and must be upon five days' notice to the county attorney (section 6039, Rev. Laws [1910], 22 Okla. St. Ann. § 784). It is further provided that upon a motion for continuance on account of the absence of evidence, if the state will con-

sent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, no continuance shall be granted on the ground of the absence of such evidence. Section 5045, Rev. Laws [1910], 12 Okla. St. Ann. § 668,."

In the Hargis Case, 33 Okla. Cr. 283, 243 P. 987, the court says:

"The first error assigned as ground for reversal is that the court erred in overruling the application of defendant for a continuance in order that he might take the deposition of witnesses in the state of Kansas. The evidence of the witnesses whose deposition was sought to be taken is largely cumulative. When the application for continuance was presented, the state agreed that the affidavit be read and used as the deposition of the absent witnesses. Defendant contends that the state should have admitted the statement as true, citing Madison v. State, 6 Okla. Cr. 356, 118 P. 617, Ann. Cas. 1913C, 484. That case sustains the contention of the defendant, but the rule there announced was long since overruled by this court. Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Ennis v. State, 13 Okla. Cr. 675, 167 P. 229, L.R.A. 1918A, 312." See, also, Sullivan v. State, 41 Okla. Cr. 371, 273 P. 372; Riley v. State, 40 Okla. Cr. 369, 269 P. 377.

The record reveals that an extended hearing was had by the court upon the motion for continuance. It is unnecessary to go into a lengthy discussion of the evidence had on this hearing. We have carefully examined the same. Most of the witnesses named in the application were for the purpose of proving the good character and reputation of defendant in locations where he had formerly resided. Only three witnesses were named who would testify to other facts, and they were immaterial and did not refer to the actual killing of the deceased by defendant. As above stated, the county attorney agreed that the statements of what they would testify should be read to the jury and this was permitted by the court.

The contention that defendant had been ill during the time that he was confined in the county jail prior to his trial and was unable to consult with counsel in order to prepare his defense was heard by the court. As previously stated, this killing occurred on October 6, 1939. The case was called at the October term, but was continued and was not actually tried until December 11, 1939.

The affidavit of the jailer which was attached to the response filed by the county attorney stated that defendant had been in his custody every day since October 6, 1939, and that he had never been seriously ill for any considerable length of time. That he had, or pretended to have, one or two heart attacks, but had never been confined to his bed at any time. That he had taken him his meals each day and that he had conversed intelligently on business matters. That his attorney had been permitted to see him and for the past two or three weeks had seen and talked with him almost daily.

Dr. Paul B. Lingenfelter, a physician at Clinton, examined the defendant on the 6th day of December, 1939. He examined him with particular attention to his nervous state, his mental condition, and also his heart and circulatory system. He used proper instruments, methods, and approved tests, and he found no condition existing which would cause the defendant to be unable to talk intelligently on business or other matters, and found him to be in good mental condition. The only evidence offered by the defendant was his own affidavit attached to his motion for continuance. Under these circumstances we do not find there was any abuse of discretion on the part of the trial court in overruling defendant's motion for a continuance.

The third assignment of error is that the court erred in admitting incompetent evidence offered by the state.

The record contains 817 pages. We have never examined a record with as much immaterial matter therein as this one contains. It abounds in evidence and cross-examination of witnesses that is foreign to the issue involved. This examination applies to counsel for both the defendant and the state. The direct examination of the defendant was far afield from the issues involved, and the cross-examination was just as far. Many voluntary statements were made by the defendant himself. Much of the cross-examination was with reference to these matters. It is unnecessary to here discuss this evidence. We have carefully examined the record, and find nothing that we consider prejudicial to the substantial rights of defendant. Much of the cross-examination was of the former wife of defendant who testified in his behalf. This was based upon letters written by her, and under the rules of evidence her examination with reference thereto was not improper. The submitting in evidence of a photograph of the deceased was not improper under the law and facts in the case. Cooper v. State, 61 Okla. Cr. 318, 67 P.2d 981.

The contention that the county attorney was permitted to introduce evidence of other crimes or violations of law is based upon the cross-examination of defendant and his former wife. Counsel for defendant in their direct examination questioned defendant to show that he had never been in previous trouble and had never been charged with a crime. The cross-examination was to show the defendant had been charged with different offenses. This is not improper cross-examination under the facts and circumstances of this case. Howard v. State, 67 Okla. Cr. 445, 94 P.2d 947; Starks v. State, 67 Okla. Cr. 156, 93 P.2d 50.

The fourth assignment of error is that the court erred in his instructions to the jury.

In this connection it may be stated that no requested instructions were offered by defendant. The defendant claimed self-defense and also temporary insanity. The court submitted both of these issues to the jury in separate instructions. It is contended by defendant that the court should have given a combination instruction advising the jury that if at the time he struck the first blow the defendant was acting in self-defense and then became temporarily insane and was in such a condition at the time he committed the ensuing acts, he should be acquitted. We know of no law which requires the placing of these two issues in the same instruction. No authorities are cited in defendant's brief supporting this contention. As a matter of fact there was little, if any, evidence on the part of defendant to support either of the defenses claimed. Defendant's evidence was that deceased said, "I am going to shoot you." But there was no evidence of her committing any overt act to carry out this threat. The law is well established that this will not even mitigate a homicide, to say nothing of constituting a justification thereof. Burks v. State, 64 Okla. Cr. 285, 79 P.2d 619; Moutry v. State, 9 Okla. Cr. 623, 132 P. 915; Betterton v. State, 17 Okla. Cr. 415, 189 P. 760; Fixico v. State, 39 Okla. Cr. 95, 263 P. 171; Edge v. State, 39 Okla. Cr. 277, 264 P. 213; Lee v. State, 33 Okla. Cr. 370, 244 P. 455.

The evidence of temporary insanity was based solely upon the evidence of defendant that, when he picked up the iron bar and struck the deceased the first blow, everything went black, and he did not know what he was doing until the deceased had been dragged from the car and struck at least eight blows. No medical testimony or any other kind was given as to defendant's insanity. The court was exceedingly fair in submitting to the jury the question of temporary insanity of the defendant under

the facts. Under these facts, it is doubtful if subsequent temporary insanity constituted a defense. However, this issue was submitted to the jury. Sloan v. State, 25 Okla. Cr. 15, 218' P. 717; Hopkins v. State, 4 Okla. Cr. 194, 108 P. 420, 111 P. 947; Turner v. State, 43 Okla. Cr. 380, 279 P. 525; Culpepper v. State, 4 Okla. Cr. 103, 111 P. 679, 31 L.R.A., N.S., 1166, 140 Am. St. Rep. 668; Adair v. State, 6 Okla. Cr. 284, 118 P. 416, 44 L.R.A., N.S., 119; Roe v. State, 17 Okla. Cr. 587, 191 P. 1048; Cunningham, v. State, 70 Okla. Cr. 131, 105 P.2d 264; Ex parte Gilbert 71 Okla. Cr. 268, 111 P.2d 205, and cases cited.

We do not deem it necessary to take up each individual instruction given by the court. We have examined the instructions carefully and they fairly state the law, as applied to the facts. We find no instruction that prejudiced the defendant or took from him any of his constitutional or statutory rights. On the other hand, they were very fair to him.

The fifth assignment of error is that the county attorney was guilty of misconduct in the introduction of incompetent evidence on cross-examination and in his closing argument to the jury.

We have heretofore referred to the first part of this assignment of error in disposing of the third assignment of error. We have carefully read the closing argument of the county attorney, which is included in the case-made. We find no part of this argument which was in any way prejudicial to the rights of the defendant, nothing that was calculated to inflame the jury or to prejudice his rights. It was strong and forceful, but he was clearly within his rights as a representative of the state. We find no part of the argument that would come within the rule announced in the cases from this court cited by defendant, and that have been reversed for improper remarks

of the county attorney. Sweet v. State, 68 Okla. Cr. 44, 95 P..2d 242; Williams v. State, 4 Okla. Cr. 523, 114 P. 1114; Morgan v. State, 9 Okla. Cr. 22, 130 P. 522.

The sixth assignment of error is that the verdict of the jury was the result of passion and prejudice.

We have heretofore given a short statement of the facts in this case. It is unnecessary to give a fuller discussion thereof. The defendant met the deceased by means of a matrimonial advertisement placed in newspapers. He was at the same time in correspondence with other women looking toward marriage. He had visions of establishing a co-operative farming scheme. From the evidence the jury was justified in finding that his marriage to deceased was because he believed she had valuable property and that the proceeds of this property could be used by him in carrying out his co-operative farming scheme. When she came to live with him he learned that the value of this property was very small. Within a week's time the trip to California had been started, and coming through the State of Arkansas where deceased had formerly lived, he found that the land which she owned was not valuable for zinc purposes as he thought, and he became mad, as he testified, and began to talk to deceased about a divorce. They had not traveled far into Oklahoma until the old woman, 78 years of age, was killed, by his striking her with an iron bar that had been placed in the car somewhere on the trip. She was then dragged from the car and struck at least eight times. These wounds were sufficient to cause death. Her skull was fractured in two places. There was nothing to show that the killing of deceased was in self-defense, and defendant's statement that everything went black when he struck her the first time, and that he was temporarily insane, is not borne out by the facts immediately follow-

ing her death. He at once began the preparation of a defense, attempting to fix a tire on his car when nothing was wrong with it, telling a story that she had been hit by a hit-and-run truck driver, and when finally confronted with the stern facts, he immediately confessed that he had killed the deceased. We do not see how it can be said that, under these facts, the jury acted with passion and prejudice in returning a verdict of guilty of murder and assessing the death penalty.

These jurors had never seen or heard of either defendant or deceased. They were not residents of Custer county or of the State of Oklahoma. There was no reason for passion or prejudice. They came to the conclusion, after a careful consideration of the evidence, that the defendant had rightfully forfeited his right to live under the law of the land, and returned a verdict finding him guilty of murder and assessing the death penalty. The jury no doubt came to the conclusion that this defendant had decided to get rid of his wife, either before he left Louisiana or Arkansas for California. The execution of the will just one week before she was killed, the disappointment in the value of her property, the securing of the iron bar with which she was killed and the placing of the same so it could be easily secured, the manner of the killing and the attempt to fabricate a defense by saying that she had been struck by a hit-and-run truck driver, all reveal a well-laid plan and scheme on the part of defendant, and was "with a premeditated design to effect the death" of this old woman 78 years of age, whom he had married, not for the purpose of love and protection, but for the unholy purpose of securing her few worldly possessions.

This court under the law has the right to modify a judgment inflicting the death penalty for murder to im-

prisonment at hard labor for life when deemed proper in the furtherance of justice. Commutation can be granted only by the Chief Executive of the state, and is granted as a matter of clemency. The judicial power to modify a judgment and sentence and the executive power to pardon, parole, or commute are wholly distinct in their nature. The one is an award of justice and the other is an act of grace. Commutation is a matter of discretion and may be refused. Justice is imperative, and must not be denied.

In the case of Fritz v. State, 8 Okla. Cr. 342, 128 P. 170, 177, this court says:

"We think that capital punishment, at the discretion of the jury, as the penalty of murder, is essential to the security of society * * *. If capital punishment should be abolished without some limitation of the pardoning power in convictions of murder and manslaughter, * * * it cannot be doubted that convictions of murder and manslaughter in this state would then in many cases be but a mere mockery of law and justice." Mannon v. State, 68 Okla. Cr. 267, 98 P.2d 73; Sands v. State, 61 Okla. Cr. 206, 67 P.2d 62.

We have carefully examined the record and find that defendant has been given a fair and impartial trial under the Constitution and laws of this state. He has been ably defended, and we find no legal reason for interfering with the judgment and sentence of the district court of Custer county, and it is therefore affirmed.

The time originally appointed for the execution of Warren Abby having passed pending this appeal, it is ordered, adjudged and decreed by this court that the judgment and sentence of the district court of Custer county be carried out by the electrocution of the defendant, Warren Abby, by the warden of the State Penitentiary, at

McAlester, Oklahoma, on Friday, the 29th day of August, 1941.

JONES and DOYLE, JJ., concur.

On rehearing July 23, 1941.

Rehearing denied.

PER CURIAM. A petition for rehearing was filed in the above case in the time provided by law, and the same was granted by reason of the importance of this decision. Oral argument was permitted and had thereon.

We have again reviewed the evidence and the legal questions presented and can see no reason for modifying the opinion heretofore rendered. The defendant was accorded every right to which he was entitled under the Constitution and laws of this state.

It is therefore ordered that the petition for rehearing, be overruled and that the judgment and sentence be carried out as provided in the original opinion heretofore filed.