HENRY HALL v. STATE.

No. A-10250.  May 24, 1944.

(149 P. 2d 268.)

E. Moore, of Coalgate, and J. A. Shirley, of Durant, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BAREFOOT, J.  Defendant, Henry Hall, was charged in the district court of Coal county with the crime of murder; was tried, convicted and sentenced to serve a life term in the penitentiary, and has appealed.

Defendant was charged with killing J. C. Chastain on January 1, 1941, in a village called Cottonwood, at a place commonly known as a "honky-tonk," about one and a half miles east of Coalgate.  Beer and other cold drinks were sold, and a dance hall was operated on the premises, a juke box furnishing the music.

The contention of the defendant is that;

"First.  The court erred in overruling the defendant's motion to set aside the information, the information not having been signed by Dale Brown, former county attorney, nor by his authority or under his direction.

"Second. That the court erred in denying the application of the defendant for change of venue in said cause.

"Third. The court erred in denying the challenge on the part of the defendant to the jury panel.

"Fourth. The verdict of guilty of murder assessed against the defendant is not supported by the evidence, and is contrary to the evidence, and contrary to the law applicable to the case.

"Fifth. That said verdict was the result of a highly prejudiced and inflamed state of mind on the part of the jury, against the defendant."

The first three alleged errors may be considered together.

The defendant contends that the information was not signed by the county attorney, Dale Brown, but was signed by some other party, presumably the attorneys who were appointed as special prosecutors by reason of the disqualification of the county attorney. Defendant's motion to quash and set aside the information was filed on November 18th, and overruled by the court on November 19, 1941. No evidence was presented. The information is shown in the record, and the name of the county attorney, Dale Brown, appears thereon. It is regular on its face, and nothing appearing to the contrary, the presumption is that the information was signed and filed in the proper manner and in proper form, and on the date it bears. We are of the opinion that the court did not err in overruling the motion to quash and set the same aside.

On the motion for change of venue, and the challenge to the panel of jurors, evidence was heard by the court. Both oral evidence and affidavits were presented, and there was some conflict in the testimony. We have carefully examined the record, and do not find that the court abused its discretion in overruling these motions. They

were filed on November 18th, and presented and overruled on November 19, 1941, the date the case was tried.

The contention that the judgment and sentence is contrary to the evidence can be sustained. From a reading of the record, it is revealed that the defendant was employed to operate the place of business above described, which was owned by one Bill Sandman. Mr. Sandman left the place about 11 o'clock on the night of December 31, 1940, which was New Year's Eve, leaving the defendant in charge. The deceased and a number of associates, both men and women, came to the premises about midnight. They were in three automobiles. They entered and danced some, and in a short while a fight started between the deceased, J. C. Chastain, and a man by the name of Shipley. This fight was over the possession of a hat. Marvin Ables, who was a member of the Chastain party, tried to separate the parties, and in the confusion a stove was knocked down, and the room filled with smoke. The defendant came from behind the bar, and was pushed back by Marvin Ables. He then secured a pistol from a drawer behind the bar. A number of witnesses testified that he was drunk, and that Shipley was drunk. They also testified that deceased was standing near the wall when the defendant shot him, and that he was unarmed and was in no way attempting to molest or injure the defendant. It is unnecessary to give a detailed statement of the testimony of these witnesses. All of them testified to practically the same state of facts. One witness for the defendant testified that he saw some one waving a poker, but he did not know who it was. Several witnesses on rebuttal testified that they did not see this witness present at any time.

The evidence was not only sufficient to convict the defendant, but the jury could not have arrived at any ver-

dict other than the guilt of the defendant. The killing of the deceased by defendant could not be justified, under the evidence. The defendant was found guilty of murder, and given a life sentence. The only question for serious consideration is, was this punishment excessive, under all the facts and circumstances of this case?

The right of this court to modify a sentence imposed, and the reason for doing so, has often been stated in its opinions. It is unnecessary to restate them. Fritz v. State, 8 Okla. Cr. 342, 128 P. 170; Anthony v. State, 12 Okla. Cr. 494, 159 P. 934; Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Westbrook v. State, 14 Okla. Cr. 423, 172 P. 464; Phillips v. State, 27 Okla. Cr. 108, 225 P. 180; Jones v. State, 48 Okla. Cr. 415, 292 P. 570; Alder v. State, 53 Okla. Cr. 374, 12 P. 2d 545; Methvin v. State, 60 Okla. Cr. 1, 60 P. 2d 1062; Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149; Hood v. State, 70 Okla. Cr. 334, 106 P. 2d 271; Moore v. State, 75 Okla. Cr. 222, 130 P. 2d 114.

As was said in Alder v. State, supra [53 Okla. Cr. 374, 12 P. 2d 547]:

"Upon what consideration then shall this court modify the judgment? Having regard for the law, we cannot do so for reasons of sentiment or sympathy; we can do so only if we can say judicially that under the entire record the punishment is too severe and that justice requires it to be modified."

The facts in this case are that defendant and deceased were practically strangers. There had been no ill feeling or ill will between them. The deceased had entered the place defendant was operating, and had been there only a short time when he became engaged in a fight with another party—not the defendant. The fight was over a trivial matter—the possession of a hat. Deceased was not under the influence of liquor, but the party with whom he was

fighting was. Defendant, evidently with the intention of stopping the fight, came from behind the bar with his pistol in his hand. Several witnesses testified that he was drunk. Others testified that he could attend to business. The testimony of practically all of the witnesses was to the effect that he was not justified in firing the shot that killed the deceased. There was no attempt on the part of deceased to do him any bodily harm.

Our statutes define murder as follows (Tit. 21 O. S. A. 1941 § 701):

"Homicide is murder in the following cases.

"1. When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being.

"2. When perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

"3. When perpetrated without any design to effect death by a person engaged in the commission of any felony."

Manslaughter in the first degree is defined (Tit. 21 O. S. A. 1941 § 711) as follows:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

"3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

The facts in this case further reveal that when defendant was arrested and had his preliminary examination, he was represented by Mr. H. M. Shirley. That on July 11, 1941, Mr. Shirley was appointed county attorney of Coal county to succeed Dale Brown, who had resigned. Defendant testified (at the hearing on the motions) that he had been told by Mr. Shirley that he would not be tried at the November, 1941, term of court. Mr. Shirley, knowing that he was disqualified, secured the services of his brother, J. A. Shirley of Durant, and E. Moore of Coalgate, to represent the defendant. Marvin Balch, who was formerly county attorney of Coal county, and his partner Hugh Sandlin, of Holdenville, were appointed as special prosecutors in this case on November 13, 1941. The case was set for trial for November 19, 1941, and was tried on that date. Counsel for defendant did not ask for a continuance on the ground that they had not had time to prepare the case for trial; but on the motion for new trial, they attached thereto an affidavit setting forth the lack of time to secure the evidence with reference to the motion for change of venue and the challenge to the panel of the jury.

In practically all of the cases we have read where the facts were similar to those in this case, the juries have found the defendant guilty of manslaughter in the first degree, and not guilty of murder. The punishment assessed has varied in accordance with the facts and circumstances surrounding each individual case. In all of these cases, we have recognized the principle that commutation can be granted only by the chief executive of the state, and is granted as a matter of clemency, and that the

judicial power to modify a judgment and sentence is an award of justice, and the act of the chief executive is an act of grace. "Commutation is a matter of discretion and may be refused. Justice is imperative, and must not be denied." Fritz v. State, 8 Okla. Cr. 342, 128 P. 170, 177. "In other words, this provision of our criminal procedure act makes it the duty of this court to review the record, and in a proper case, if necessary in the furtherance of justice, modify the judgment so as to prevent the imposition of punishment which the evidence will not warrant."

While, as above stated, there was no justification for the killing of deceased by defendant, the facts cause one to come to the conclusion that the punishment given defendant was the result of passion and prejudice on the part of the jury. We are, therefore, of the opinion, as in the Alder Case, supra, "that under the entire record the punishment is too severe and that justice requires it to be modified;" and that the punishment should be reduced from life imprisonment to imprisonment in the State Penitentiary for a period of 50 years.

As so modified the judgment and sentence of the district court of Coal county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.