## C. W. ABBOTT et al. v. STATE.

No. A-10306.    Jan. 10, 1945.

(155 P. 2d 267.)

For former opinion, see 78 Okla. Cr 407, 149 P. 2d 514.

George H. Giddings and T. Jack Tellegen, both of Oklahoma City, S. E. Dunn, of Tulsa, and David Tant, of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for defendant in error.

BAREFOOT, P. J. Original opinion in this case is reported in 78 Okla. Cr. 407, 149 P. 2d 514, 521. Petition for rehearing was granted. and defendant has filed a brief in support thereof. The state was granted time to file reply brief, but has not done so.

We consider it necessary to refer to only one of the questions presented. It is urgently contended that by reason of the holding of the court that the closing argument of the county attorney was error, if this case is not reversed by reason thereof, it should at least be modified.

As stated in the original opinion, the closing argument of the county attorney was a "strong appeal for the conviction of the defendant." We did not give the statements in the original opinion, but here quote some of them :

"Gentlemen, in the ten years that I have been in the office of the county attorney of this county, I have seen a lot of rottenness, I have seen a lot of meanness, and I have seen a lot of vileness, but I say to you in all sincerity, when a couple of fellows like that take bread out of the mouths of little crippled broken bodied babies, on the pre-

tense of buying crutches for them through a rotten, stinking subterfuge like those two birds did, then I say in my ten years' experience here, we have reached an all-time low in rottenness, and an all-time low in degraded perfidious human conduct, and those are the gentlemen about whom I speak. That is the way I am going to treat them in the next seventeen minutes; that is what I think of them, from the record in this case. Mr. Tant: Mr. Gilmer, pardon me, we wish to take exception to the remarks of the county attorney, and ask that the court instruct the jury to disregard them, as being prejudicial and not within the issue. The Court: Gentlemen of the jury, you will bear in mind that the county attorney makes his deductions based on the facts in the case. That will be a question for you to determine. . . . Now from the record in this case, who was capable of making up a story like was told to you, Nancy Dickinson or Jim Fletcher? You saw him on the witness stand; smart, let me tell you, and in my opinion, from the record in this case, I think we are dealing with two of the slickest confidence men probably in the entire United States of America today. Mr. Tant: We object— Mr. Gilmer: That is my opinion from the record in the case, and here is where the real— Mr. Tant: We object to those remarks, if the court please, and ask the court to instruct the jury not to consider them. The Court: Overruled. That will be a question for the jury. Mr. Tant: Exception. Mr. Gilmer: It hurts, I know it hurts, and I don't blame them. But it is pay day now, it is pay day now.

"Gentlemen, let me tell you something. Let's figure out if we can what kind of fellows we are dealing with. We didn't know them until they got on the witness stand, we twelve jurymen, so about the best we can do is to base our conclusion on what we have seen and what we have heard from the testimony of these witnesses here under oath.

"What do we know about this Jim Fletcher, for instance? He is in the oil business. Bless your soul, he knows all about it! He is in the oil business and has been

in it for years. He is drilling a well in Shackelford County, Tex. He knows all about the oil business, Jim Fletcher, and Nancy Dickinson not a crying thing. Does that make sense to you? Certainly and certainly.

"Here is what I think, from the record in this case, happened. I think Abbott heard—I don't know how he heard—'there is a widow with some money, over there at Pawhuska. I will go up and contact her and see if she is ready for picking.' And he did, and he thought she was, so he can act accordingly.

"And then he got on the phone and called his old buddy and partner in crime, Jim Fletcher, and says, 'Jim, come on up here to Pawhuska, I have got a woman here and we can take her for a little cash.' And that is what happened, the record shows that from start to finish. So he came. Slick! He is the slickest operator I have seen up to date.

"Here comes a good story that he had to fool this poor woman, don't you see? Jim says, 'I want to help you, I want to help you. I love little bity crippled broken bodied kiddies, I want to help them all to have crutches, I want to help you.'

"Oh, you rotten, rotten rascal, from the record in this case, you shouldn't have done that, that wasn't fair, it wasn't decent; it wasn't even, from the record in this case I submit to you, human.

"Mr. Tant: If the court please, we want to make an objection to the remarks of the county attorney, and ask the court to instruct the jury to disregard them.

"The Court: All right.

". . . if they did it for that reason, then you wrap them up in celophane and send them down to McAlester, where they belong, and not for any thirty days or thirty months, but for five years, and it is just a pity that you can't give them more than that. . . .

"I hope to heaven, I hope to heaven that when this jury, before you go home, I hope you don't let one of them

start talking to you this afternoon, because he is liable to sell you and me an oil lease. When this case is over I am going down and lock my door because I want to make myself safe if I can. So don't give them a chance at you, because they are slick.

"Now let me tell you, confidence men all over the United States— I mean this seriously, and I sure believe it is true—by nightfall tonight every confidence man in the United States will know just what the verdict of this jury was. It will be important to them, because it is a thoroughly systematic and business-like crowd, as witness the way they handled this deal with this woman.

"I say again, gentlemen, I believe that every important confidence man in the United States—

"Mr. Dunn: If the court please, we object to that as prejudicial, and not a fair deduction from the evidence in this case.

"The Court: The jury has heard the evidence, and they are the triers of the facts. They doubtless will make their own deductions from the facts. Overruled.

"I believe this from the record in this case. I believe that before nightfall, every important confidence man in the United States will know about your verdict, and you can tell them what you think of the whole rotten, mean, stinking thing by convicting these two parties and putting them out of circulation for five years at least.

"Now, gentlemen, when you go to your jury room, don't waste any time, don't waste two minutes, but come back in here with a verdict of guilty, and this sort of confidence men will never come back to Tulsa county again."

The statute under which these defendants were charged provided for a maximum penalty of five years in the penitentiary (Tit. 21 O. S. 1941 § 1705), and this was the penalty assessed by the jury in this case.

After rereading the closing argument of the county attorney, and the cases of Hall v. State, 68 Okla. Cr. 367,

99 P. 2d 163, and Anderson v. State, 79 Okla. Cr. 194, 153 P. 2d 245, we have reached the conclusion that by reason of statements made by the county attorney in his closing argument, and the failure of the court to instruct the jury not to consider the same, justice demands that the judgment and sentence imposed upon each of these defendants be modified from five years to three years in the State Penitentiary.

As so modified, the judgment and sentence of the district court of Tulsa county is affirmed.

JONES, J., concurs.   DOYLE, J., not participating.