ARSTELL DOOLEY v. STATE.

No. A-10522. April 24, 1946.

(168 P. 2d 651.)

Carl C. Wever, of Pawhuska, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and J. D. Plunkett, Co. Atty., of Bartlesville, for defendant in error.

BAREFOOT, J. Defendant, Arstell Dooley, was charged in the district court of Washington county with the crime of murder. He was tried, convicted of manslaughter in the first degree as an included offense, and sentenced to serve a term of 15 years in the State Penitentiary. From this judgment and sentence he has appealed.

The first assignment of error is "the court erred in forcing defendant to trial immediately upon appointing him counsel."

The consideration of this assignment of error necessitates a short statement of the facts.

Defendant was charged with the killing of Willie Meigs on the 1st day of June, 1943. He was arrested, and had a preliminary trial. An information was filed in the district court on June 8, 1943. Defendant employed counsel, Mr. Geo. S. Hill, who represented him at the preliminary trial, and he paid him for his services in the trial of his case. His trial was set for October 25, 1943, and defendant, his counsel and witnesses were in court, but the case was continued at the request of the county attorney, to October 28, 1943. The record is silent as to what occurred on October 28, 1943, but on November 1, 1943, the following proceedings were had:

"The Court: Is the county attorney ready to try this case? Mr. Plunkett: The state is ready. The Court: Is the defendant ready? The Defendant: As soon as I get my lawyer here. The Court. How? The Defendant: As soon as I get my lawyer here. The Court: Who is he? The Defendant: Mr. Hill. The Court: Is Mr. Hill sick? The Defendant: He is supposed to be sick. He has got a doctor. I was out there last night. The Court: You were out there last night? The Defendant: Yes, sir. I went out to talk to him to see if he was going to be here. He said he would be here. The Court: He said last night he would be here? The Defendant: He said he would try to. Said the doctor had been out to see him. The Court: What time were you there? The Defendant: Sir? The Court: What time were you there? The Defendant: It was about 8 o'clock I think when I went out. The Court: He told you then he was going to be here today? The Defendant: Told me he would try to. I told him I wanted to get it over and told him what you said, you see.

He said, 'Go on up. I'll get out there if I can.' So I didn't call up this morning. The Court: You didn't? The Defendant: No, sir. The Court: You had better get you a lawyer if you want one. The Defendant: Well, I can call him up. The Court: I don't know whether you can get Mr. Hill. If he is sick, of course, he can't come. But we are going to try this case. That is what I told you last Thursday, isn't it? The Defendant: Yes sir. I told him the same thing. The Court: Sir? The Defendant: I told him the same thing. He said he was going to try to get here. I can get in touch with him right away. If somebody will take me out—if Mr. Tom or Mr. Fry will take me out to get him. Of course, if I can't get him, I don't have no other lawyer that knows anything about the case. The Court: What do you say, Mr. County Attorney? Mr. Plunkett: I don't know, your honor. I expect it would be better to continue it for the term than to try to force him to trial. The Court: What time were you out at Mr. Hill's house last night? Mr. Plunkett: 7 o'clock. The Court: What did he say then about coming? Mr. Plunkett: He said he couldn't make it. The Court: The doctor was there at that time? Mr. Plunkett: The doctor was there. The Court: I don't see the necessity of continuing this case for the term. This jury hasn't tried but one case. They ought to try two. What about the 15th? Can we put it over until the 15th? Mr. Plunkett: It will be all right with me. The Court: Mr. Hill ought to be well by that time. Can you get you another lawyer the 15th if Mr. Hill isn't there? The Defendant: If he ain't able, guess I'll have to. The Court: I am asking you if you can. The Defendant: I don't know about the money. It takes money. I can try. I don't know whether I'll be able to find one. The Court: You will be ready for trial the 15th if the case is assigned for that time? The Defendant: Yeah, I'll be here. The Court: And ready for trial? The Defendant: If he ain't going to be ready the 15th, I'll have another lawyer. The Court: I will postpone this case on application of the defendant until the 15th, two weeks from today. Be ready at that time. Have your witnesses back at that time. This is an

unfortunate situation. The Defendant: I thank you, Judge."

On November 15, 1943, the following proceedings were had:

"The Court: Call the names of the jurors, Mr. Clerk, please, if you have the list of them. Court Clerk: I'll get the list. The Court: Is the defendant in the court room——Arstell Dooley? Mr. Plunkett: No, he isn't. The Court: Call him, Mr. Sheriff. (Names on jury list called by court clerk)

"Court Clerk: Twenty-five answered. Anybody's name I didn't call? Twenty-five answered.

"The Court: Very well, Who are the sureties on defendant's bond, Mr. County Attorney? (County Attorney to bench) The Court: Mr. Bailiff, call Eleanor A. Weaver. (Eleanor A. Weaver called twice by the bailiff) The Court: Call Mary Duffield. (Mary Duffield called twice by the bailiff) The Court: Lonney Dooley. (Lonnie Dooley called twice by bailiff) The Court: Call Arstell Dooley again. The Bailiff: The girl said he was coming. (Defendant in court room.) The Court: You are Arstell Dooley? The Defendant: Yes, sir. The Court: Are you ready for trial? The Defendant: Well, my lawyer is in bed— The Court: Just a moment. Is the state ready for trial? Mr. Plunkett: State is ready. The Court: Are you ready for trial? The Defendant: Well, I haven't got— my lawyer isn't able to be here. The Court: Well, you were to get another if he wasn't able to be here. The Defendant: I done paid him in full for what he charged for the case, and I couldn't be able to get another one. The Court: I will appoint one. Mr. Hurt, are you able to take care of this boy? Mr. Hurt: I don't know a thing in the world about this case. This is a pretty serious case. I can try. The Court: Take him in my room and talk to him. Let me know when you are ready for trial. (Mr. Hurt and defendant retire from court room) Mr. Hurt: There are just two of our witnesses here. The Court: Were they subpoenaed? Mr. Hurt: He said they were being sub-

poenaed. I don't know. The Court: Have an attachment for them, if you wish to. Mr. Hurt: I don't know what to do in a case like this. Your Honor, I am frank to tell you I am not really ready to go to trial myself. The Court: I know, Mr. Hurt, you couldn't very well be prepared to try this case but it has got to be tried. The defendant knew this case was coming up and if his lawyer couldn't be here he should get another lawyer. If he could not procure one he should have let the court know. Mr. Hurt: This is a serious case. The Court: Let me finish, Mr. Hurt. If he couldn't hire another lawyer he should have let the court know and the court would have appointed a lawyer and let him get ready. It was his business. He knew it. So you will have to go to trial. Mr. Hurt: I will do the best I can. The Court: Call a jury, Mr. Clerk."

Defendant's second assignment of error is that the court erred in his instructions to the jury. It is stated that this contention is based on the third assignment of error in the motion for new trial, where it is alleged "that the verdict is contrary to and in disregard to the instructions of the court." It is then stated, in the brief, "There were no instructions offered by the defendant and no exceptions saved by defendant to the instructions given." Counsel for defendant recognizes the general rule that where no exceptions are made to improper instructions during the trial, the defendant waives his right and the question of improper instructions cannot be raised in this court. But defendant seeks to bring this case within the exception to the rule, and in which we have held that where the instructions constitute a fundamental error and deprive the defendant of a substantial right, the error will be considered whether an exception is taken or not.

We have carefully examined the instructions given by the court and do not find any fundamental error in

any of them. We shall not unduly lengthen this opinion by considering all of the instructions.

Instruction No. 16 defines an "overt act." When this instruction is considered along with the other instructions given by the court, there is nothing therein to deprive the defendant of any right.

Counsel calls attention to the court's instruction No. 4, and quotes therefrom as follows:

"You are instructed that the defendant's pleas in this case is that he is not guilty. He goes into the trial of this case presumed to be innocent. He is clothed with this presumption and it remains with him until you find *if ever*, by the proof beyond a reasonable doubt that he is guilty."

The words "if ever," which are italicized in the brief, do not appear in instruction No. 4 as it is shown in the case-made.

Instruction No. 21 was as follows:

"You are further instructed that you should not permit sympathy, or your ideas of what the law should be, or whether the law sought to be enforced in this case is a good or desirable law, to interfere with or bias you in any degree. You should try the case solely upon the law and upon the evidence produced in court in this case."

We do not consider this instruction improper, and the giving of the same could not have been prejudicial to defendant.

Instruction No. 24 was to the effect that it would require the full panel to render a verdict, and that the same should not be arrived at by "casting lots" or by "chance"; that the jury should be governed as to the law by the instructions, and by the evidence. The other

parts of this instruction were such as are given in all criminal cases. There was no request that the court instruct the jury to assess the punishment. Certainly there was no fundamental error in the giving of this instruction.

Under the head of "other assignments of error," it is contended that reversible error was committed by reason of the failure of the record to show that the court ever ruled upon the demurrer to the information filed by the defendant. The record reveals that after the demurrer was filed on June 9, 1943, defendant was arraigned and entered a plea of not guilty. This constituted a waiver of the demurrer.

It is also contended that the state failed to make proof of venue in Washington county. The evidence was that the killing occurred at 408 North Johnstone, in the city of Bartlesville, and the court will take judicial knowledge of the fact that this was in Washington county.

There is no merit in the contention that there was error in the manner of selecting the jury.

The contention that the remarks of the county attorney in his opening statement to the jury, as follows: "And, by the way, Willie had just been inducted into the army, that is, he had taken his physical examination and was to leave the following Thursday," were prejudicial to the rights of the defendant is without merit. No exception was taken to the statement, and we do not think it constituted prejudicial error.

The defendant was asked upon cross-examination:

"Q. Arstell have you ever been to the penitentiary before? A. Sure. Q. What was that for? A. Well, I had to shoot a man. Q. You shot a man? A. Yes, sir. Q. How many years did you get for it? A. I got 15.

Q. Where was that? A. It was De Moines, Iowa. Q. What about shooting Wilbur Landis here in Bartlesville? A. Ain't nothing about it. I just had to shoot him because he had a pistol of mine drawn on me. There is another thing— The Court: Don't tell the details. The question is, whether or not you were convicted of that offense. The Witness: Oh, no, I wasn't convicted of that offense."

There can be no objection to the testimony of the defendant that he was convicted in the State of Iowa for killing a man and sentenced to the penitentiary for 15 years. When the defendant offered himself as a witness, the county attorney had the right to ask him on cross-examination if he had been convicted and received a sentence to the penitentiary. He admitted this was true. As to his shooting someone in Bartlesville, this was improper, but no exception was taken thereto, and no motion was made by defendant to strike it. He testified that he was not convicted in that case, and he was cautioned by the court not to tell the details. Under these circumstances, we are of the opinion that no fundamental error was committed.

Other assignments of error will be considered when giving a statement of the evidence in this case.

The facts as revealed by the record are that defendant, Arstell Dooley, killed Willie Meigs at the place of business of Lonnie Dooley, a brother of defendant, in Bartlesville, on June 1, 1943. Six witnesses, some of whom saw the killing, and others who were in close proximity thereto, and Dr. Torrey, who examined the body of the deceased, testified for the state. Deceased arrived at the scene of the difficulty some time before noon. He went out on the porch where several of the witnesses were. He had some dice, and said to one of the witnesses, "I'll bet you fifty

cents I throw eleven the first shot." In a few moments the defendant came out on the porch, and "called" the bet, and the deceased rolled the dice several times, and won a dollar, and a half pint of whisky from the defendant. They had some few words with reference to the dice game, and some words with reference to who won. Defendant turned and walked into the house, and was followed by the deceased. The other parties walked into an adjoining room, from which they could see and hear defendant and deceased talking through an opening in the wall. Lonnie Dooley, a brother of defendant, called and said, "You-all cut out that argument in there." They next heard a pistol fire. They could see defendant through an opening from the back room to the front room. The defendant had a pistol in his hands. The deceased staggered back to the door and fell, and a number of the witnesses stepped over his body in passing out of the building. None of these witnesses saw anything in the hands of deceased, or near his body. The sheriff was called and he found an ice pick lying near the body of deceased. The defendant left the building and went to a residence three or four houses from the scene of the difficulty and was there arrested by the officers. The pistol with which deceased was killed was recovered and introduced in evidence.

All of the witnesses who were in the building at the time of the difficulty were called as witnesses by the state, including the brother of defendant.

Defendant testified and admitted firing the shot that killed deceased. He testified that the deceased told defendant that he would kill him. That deceased got an ice pick and started toward defendant, and he fired the shot. His testimony was a rambling statement of what

occurred. The jury had an opportunity to hear his testimony and observe his demeanor upon the witness stand, and evidently did not believe him. Defendant was convicted of manslaughter in the first degree, and given 15 years in the penitentiary.

Several witnesses were called by defendant to testify as to the reputation of the deceased as to being a quarrelsome and dangerous person. Counsel for defendant did not properly qualify these witnesses and the attorney who is now prosecuting this appeal, and who did not appear at the trial, complains that if these witnesses had been properly qualified they would have given valuable testimony for the defendant; and that by reason of this failure, the defendant was not given a fair trial. We have carefully examined this testimony, and while the witnesses were not properly qualified, the trial court was very considerate of the rights of the defendant and permitted these witnesses to testify to personal encounters they had previously had with deceased, which were not competent. There was nothing in this proceeding which would prejudice the rights of the defendant. The court, in an attempt to be fair to defendant, permitted testimony to be introduced favorable to defendant which was not admissible.

An examination of the record as a whole in this case reveals only one error that could have been to the prejudice of the defendant, and that is, that defendant had employed counsel to defend him at the preliminary examination, and had fully paid him for his services at the trial. The case was set for trial on November 1, 1943, and defendant's counsel was not present by reason of illness. The case was passed until November 15, 1943, and defendant was cautioned to be ready for trial at

that time. On the night of the 14th, defendant saw his lawyer and he told him he would be present in the morning. During the night he was sick and a doctor was called, and advised him he was unable to be present at the trial, and it would be dangerous for him to do so, as he had a heart ailment. Defendant had the right to depend on the word of his lawyer that he would be there. He did not understand much about court procedure. An attempt was made to forfeit his bond while he was standing in the hall, just outside the courtroom. No doubt this was in the presence of the jury who were to be empaneled to try him. The court appointed counsel to defend him and gave him an opportunity to consult with defendant, but no time was given to prepare for trial. The attorney who was appointed protested that he was not familiar with the case, and was not prepared to go to trial. The court said:

"I know, Mr. Hurt, you couldn't very well be prepared to try this case but it has got to be tried. The defendant knew this case was coming up and if his lawyer couldn't be here he should get another lawyer. If he could not procure one, he should have let the court know."

We recognize the rule that the granting or refusal of a motion for continuance is generally within the discretion of the trial court, and unless that discretion has been abused an appellate court will not interfere. The court in the instant case, as revealed by the record, was very fair in his desire and effort to protect the defendant, and to give him a fair and impartial trial, but it is also revealed by the record that it was his desire that defendant be tried at that term of the court. This is evidenced by his remark, "I don't see the necessity of continuing this case for the term. This jury hasn't tried but one case. They ought to try two."

This court has often had before it the question of a defendant having counsel who should be permitted to have time to prepare before being forced to trial, and especially in capital cases. The question is somewhat different in the instant case, for ·the reason that defendant had counsel to represent him and he had received his fee from defendant for his services, but by reason of illness he was unable. to appear, after the court had granted a 15 day continuance by reason of his illness.

There appears in the record as a part of the case-made an affidavit of defendant's attorney, Geo. S. Hill, which is as follows:

"Geo. S. Hill of lawful age, being first duly sworn, upon his oath says:

"That he is a regularly licensed and practicing attorney at law with offices in Bartlesville, Washington county, Oklahoma.

"That in the early part of June, 1943, he was employed by Arstell Dooley, to represent him as his attorney in the criminal case of the State of Oklahoma vs. Arstell Dooley, charging the said Dooley with the murder of Willie Meigs, on or about the 1st day of June, 1943, in Washington County, Oklahoma.

"This affiant appeared as counsel for said defendant at the preliminary hearing, and prepared the defense in the District Court for said defendant Dooley, and that said defendant Dooley paid this affiant in full for his services in both the preliminary hearing and to represent him in the District Court, on the charge of murder, in Washington County, Oklahoma.

"This affiant says, that he has been in ill health, since October, 1943, and under the care of a physician on frequent occasions, since said date and at the present time is confined at his home.

"This affiant says that on the evening of November 14th 1943, defendant Dooley came to his home, and he discussed at considerable length with this defendant, the facts in his case, and the defense that would be interposed. The case being assigned for trial on the morning of November 15th 1943. This affiant says, that his health was somewhat improved, and in his judgment he would be in a physical condition, to appear in court on the following morning, and represent defendant Dooley on the charge of the murder of Willie Meigs, the case being assigned for trial on the morning of November 15th, 1943, in the District Court of Washington County, Oklahoma, at 9 o'clock a. m. This affiant says he advised the defendant Dooley on the evening of November 14th, 1943, that he would be in court on the following morning as his counsel in the case of the State of Oklahoma vs Arstell Dooley, charged by information with the murder of Willie Meigs.

"This affiant says that during the night, he became ill and called his physician, who came to his residence, and that said physician told this affiant that he was not in a physical condition to appear in court in the defense of an important criminal trial. This affiant further says that said physician told him he should be in bed and not sit up, and that to appear in court would retard his recovery and impair his health, on account of the nervous strain in the trial of a suit of this nature.

"Further affiant sayeth not.

"[s]   Geo. S. Hill<br>Affiant.

"Subscribed and sworn to before me a Notary in and for Washington County, Oklahoma, on this 10 day of February 1944. "Seal [s] W. G. Hurt, Notary Public.

"My commission expires 5/5/47."

This court in the case of Westbrook v. State, 14 Okla. Cr. 423, 172 P. 464, 469, in passing upon a motion for

continuance, had occasion to use the following language, the logic of which we think should be applied to this case:

"However, technical objections should not ordinarily prevent the granting of a motion for a continuance in a capital case, if necessary to a proper presentation of the defendant's case. It is the right of every person accused of crime to have a fair trial and compulsory process to compel the attendance of his witnesses, and this involves as a matter of course the time reasonably necessary to prepare for trial. The statute prescribes that civil cases in the district court shall not stand for trial until ten days after the issues are made up and no felony case should be set over the objection of the defendant within ten days after his plea is entered. Under the provisions of our Procedure Criminal (section 6003, Rev. Laws [1910, Tit. 22 O. S. 1941 § 1066]) this court, in the furtherance of justice, has the power and authority to modify any judgment appealed from by reducing the sentence. However, that power should not be exercised unless it is apparent that an injustice has been done. Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Fritz v. State, 8 Okla. Cr. 342, 128 P. 170.

"To reverse the judgment of conviction in this case on the facts which are either admitted or so clearly established as to be beyond controversy would be not only to delay justice, but to give no force to the statute which prescribes that such judgments may only be reversed when upon the whole record the court is satisfied the substantial rights of the defendant have been prejudiced. However, if the guilt of the defendant was in any way left in doubt, or if we could believe that the defendant was prejudiced, we should feel it our duty to give him a new trial.

"For the reasons stated, and taking into consideration the fact that the defendant McKennon, who it appears was the arch-conspirator, was upon the recommendation of the prosecuting attorney sentenced to life imprisonment upon his plea of guilty, we are of the opinion that in the furtherance of justice the judgment and sentence

in this case should be modified to imprisonment for life at hard labor."

See, also, Noel v. State, 17 Okla. Cr. 308, 188 P. 688; Goben v. State, 20 Okla. Cr. 220, 201 P. 812; Hall v. State, 78 Okla. Cr. 389, 149 P. 2d 268, 271; Abbott v. State, 79 Okla. Cr. 377, 155 P.2d 267; Rheuark v. State, 81 Okla. Cr. 60, 160 P.2d 413.

In the instant case, the state placed upon the witness stand all of the witnesses who were at or near the scene of the killing, including the brother of defendant. As above stated, the trial court permitted evidence to be introduced by defendant that was inadmissible, but which demonstrated the violent character of deceased. A reading of the record as a whole convinces us that the guilt of defendant of manslaughter in the first degree was fully justified, and that a retrial of this case would probably not change the results. But we are of the opinion that by reason of the statements heretofore made, justice demands that the judgment and sentence of the district court of Washington county should be modified from 15 years in the penitentiary to 10 years in the penitentiary; and as so modified, the judgment is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.