PETER MOORE v. STATE.

No. A-10545.   May 29, 1946.

(169 P. 2d 575.)

B. C. Franklin, of Tulsa, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty. Tulsa County, of Tulsa, for defendant in error.

BAREFOOT, J. Defendant, Peter Moore, was charged by indictment in the district court of Tulsa county with the crime of murder; was tried, convicted and sentenced to a term of life imprisonment in the State Penitentiary, and has appealed.

The first three assignments of error may be considered together. They are:

"1. That said verdict was contrary to the competent evidence in this case.

"2. That there was no evidence upon which to base the verdict of the jury.

"3. That said verdict was contrary to law and against the weight of the evidence."

The charge against the defendant was the outgrowth of the killing of one Mack Cudjo, on the 7th day of November, 1943, at the home of the defendant. A number of persons had come to the home of defendant at different times prior to the killing, which occurred between 7:00 and 7:30 in the evening. They were there for the purpose of gambling.

Defendant's home consisted of three rooms, running parallel. The "front" or bedroom was on the south, the kitchen on the north, and the dining room, where the killing occurred, is referred to as "the middle room." There was only one outside door, and it was in the south.

Present in the room at the time of the killing were the following persons: Joe Reynolds, W. D. Richardson, Leonard Leedy, Dan Jack Bennett, Pauline Robinson, Peter Moore and his wife Perline Moore. The first three of these testified for the state. Dan Jack Bennett testified for the defendant. The defendant, his wife Perline Moore, and Paulin Robinson did not testify.

There is quite a conflict in the evidence as to what happened just prior to the killing, at the time of the killing, and immediately following the same. However, as to some of the important details, there is no conflict. The deceased, Mack Cudjo, had been at defendant's house

for some time prior to the killing and before the arrival of the other witnesses. He had evidently become intoxicated, and was sitting on a divan, in the northeast corner of the middle room. A large round table, used for gambling, was in the center of the room. The witnesses Joe Reynolds and W. D. Richardson had come about 6:30 p. m., and the witness Dan Jack Bennett was there when they arrived. The state's witnesses testified they had not engaged in gambling. The defendant's witness, Dan Jack Bennett, testified that they had. Soon after the arrival of Reynolds and Richardson, a fight occurred between the wife of defendant and Leonard Leedy. She was the aggressor, as testified by the witnesses for the state. Defendant took the cloth from the table, and went into the adjoining bedroom and secured a pistol, and returned. There is some conflict in the testimony as to just what happened, but from all the testimony it is evident that the defendant hit the witness Leonard Leedy over the head with the pistol which he had in his hand. A shot was fired, either purposely or as a result of defendant hitting Leedy with the pistol. Defendant's wife immediately exclaimed: "You done shot that man sitting over there." The two state witnesses, Reynolds and Richardson, testified that defendant answered, "I ought to finish him up." An examination revealed that Mack Cudjo had been hit in the head and was bleeding profusely. The state's witnesses testified that at the order of defendant they, with Bennett, carried the body of the deceased from the house and placed it in the alley about 75 feet from the middle room. They returned to the house as directed by defendant, and remained until the officers arrived. The wife of defendant had been injured in the affair by the defendant, and she was taken to a doctor by the witness Bennett.

Police officers found the body of deceased in the alley and traced the blood to the house of defendant, and he told them that he had killed deceased accidentally. He was immediately arrested, as was also the witnesses Reynolds, Richardson and Bennett. Charges were preferred against them, and were pending at the time of the trial of this case. Mack Cudjo died soon after entering the hospital. No autopsy was held, but the physician who examined him testified that his death was caused as the result of a gunshot wound, and that in his opinion it had been inflicted about an hour prior to his death.

There was introduced in evidence by counsel for defendant a map or plat of the room in which the killing occurred, which was prepared at the request of counsel for defendant on the day following the killing. This map or plat is attached to the case-made. It is upon the facts revealed by this map as to the location of the parties and the fixtures in the room that it is contended that it would have been impossible for the shot from defendant's gun to have killed the deceased, Mack Cudjo. It is unnecessary, and also impossible, for us to refer to the location of the parties as revealed by the testimony of the witnesses, and as indicated on the map. There is not only a conflict in the testimony, but also many statements made by the witnesses when referring to the map that make it impossible to determine the location. The jurors who were present and examined the map and heard the witnesses testify to the different locations, and point them out, were in a much better position to determine this question of fact than is this court.

It is the contention of defendant that the deceased was sitting on a divan in the northeast corner of the room, with his hat over his face, and that defendant

was at the table in the center of the room, facing north, and that the witness Leedy whom defendant hit with the gun, and defendant's wife, were to the northwest, and that it would have been physically impossible for the discharge from the pistol to have killed the deceased in the northeast corner of the room. This contention is based upon the assumption that the parties were located as above stated, but an examination of the record reveals that the witness Leedy testified that he was not as located by defendant, but that he was on the east side of the table, deceased was in the northeast corner of the room, and the defendant was to the south of him.

We further call attention to some of the questions and answers of the witnesses which show the impossibility of this court to pass upon or know the exact position of the parties:

The witness Leedy:

"Q. Show the jury what position you were in, when you were down on the floor, come down here where the jury can see you. A. I was down like this (indicating). Q. When the shot was fired, where were you—did you have your hat on? A. Yes, sir, my hat was on, and he said, 'Get up from there and get over in that chair,' and I started to get up this way (indicating) and the gun went off. * * * Q. On what side of this table were you standing, at the time Peter struck you? A. At the time he snatched the blanket off the table? Q. At the time he struck you, on what side of the table were you? A. I was on the east side of the table, going out the door south. Q. What is that? A. I was going out the door, facing south. And I was on the east side of the table. Q. You were not on the west side of the table? A. No, sir."

If the jury believed this testimony, then the deceased was in direct range of where the discharged bullet would

have naturally gone at the time the pistol was fired. This was a question of fact for the jury to determine after a consideration of all the testimony. And having been determined by them, the verdict will not be set aside on appeal to this court because there is a conflict in the evidence.

It is next contended that this case should be reversed by reason of the misconduct of the special prosecutor who appeared in this case. This contention is based upon the following remark: "The defendant is not entitled to any consideration because of his conduct here." It is claimed that this remark evidently referred to the fact that defendant did not take the witness stand in his own behalf. In the first place, there is nothing in the record to show that this remark was made, and therefore no exception taken. It first appears in the motion for new trial. Under the law this is not sufficient to present the matter. The argument not having been taken, it is impossible for the court to ascertain whether the statement was made and if made whether it was justified by something that happened or had been said at the trial. Peters v. State, 71 Okla. Cr. 175, 110 P. 2d 300; Rainey v. State, 71 Okla. Cr. 1, 107 P. 2d 371; Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191.

The contention that the court should have instructed the jury on circumstantial evidence can not be sustained for the reason that the state did not rely solely upon circumstantial evidence, but there was much direct and positive testimony.

The only question in this case that demands serious consideration is as to whether the sentence inflicted is excessive and should be modified, after an examination of the record.

There can be no doubt that deceased came to his death by reason of the shot fired from the pistol of defendant. No other shot was fired. The testimony of all the witnesses was that no altercation or difficulty of any kind had taken place involving the deceased prior to the firing of the one shot. All testified that he was alive while sitting on the divan prior to the shooting and nothing to indicate that he had been previously injured. The statement of defendant's wife immediately following the firing of the gun to defendant, "You done shot that man sitting over there," is conclusive that he was hit by that shot, and the testimony of the physician who examined him as to the length of time the injury had been inflicted all tend to prove conclusively that it was the shot from defendant's pistol that hit the deceased and caused his death. All of the testimony indicates that there was no premeditated design upon the part of the defendant to kill the deceased, or to kill Leonard Leedy. The killing of deceased would only constitute murder as defined by the third paragraph of 21 O. S. 1941, § 701, which provides:

"Homicide is murder in the following cases. * * *

"3. When perpetrated without any design to effect death by a person engaged in the commission of any felony."

We have previously held that where one was charged with murder, he may be convicted under either of the three paragraphs. Evinger v. State, 57 Okla. Cr. 63, 45 P. 2d 552; Ware v. State, 47 Okla. Cr. 434, 288 P. 374; Carle v. State, 34 Okla. Cr. 24, 244 P. 833; Jones v. State, 15 Okla. Cr. 547, 179 P. 619.

In practically all of the cases we have read, where the facts were similar to those in this case, the juries

have found the defendant guilty of manslaughter in the first degree, and not guilty of murder.

A case very similar in facts to the instant case was that of Hall v. State, 78 Okla. Cr. 389, 149 P. 2d 268, 270, and which contains the early and late decisions of this court. We deem it unnecessary to quote extensively from that case, as it may be read by those interested, but it is there stated:

"The evidence was not only sufficient to convict the defendant, but the jury could not have arrived at any verdict other than the guilt of the defendant. The killing of the deceased by defendant could not be justified, under the evidence. The defendant was found guilty of murder, and given a life sentence. The only question for serious consideration is, was this punishment excessive, under all the facts and circumstances of this case?

"The right of this court to modify a sentence imposed, and the reason for doing so, has often been stated in its opinions. It is unnecessary to restate them. Fritz v. State, 8 Okla. Cr. 342, 128 P. 170; Anthony v. State, 12 Okla. Cr. 494, 159 P. 934; Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Westbrook v. State, 14 Okla. Cr. 423, 172 P. 464; Phillips v. State, 27 Okla. Cr. 108, 225 P. 180; Jones v. State, 48 Okla. Cr. 415, 292 P. 570; Alder v. State, 53 Okla. Cr. 374, 12 P. 2d 545; Methvin v. State, 60 Okla. Cr. 1, 60 P. 2d 1062; Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149; Hood v. State, 70 Okla. Cr. 334, 106 P. 2d 271; Moore v. State, 75 Okla. Cr. 222, 130 P. 2d 114."

While, as above stated, there was no justification for the killing of deceased by defendant, the facts cause us to reach the conclusion that the punishment given defendant was the result of passion and prejudice on the part of the jury. We are, therefore, of the opinion that under the entire record the punishment is too severe and

that justice requires it to be modified and reduced from life imprisonment to imprisonment in the State Penitentiary for a period of 40 years.

As so modified, the judgment and sentence of the district court of Tulsa county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.