## WALKER v. STATE.

No. A-11246.   Jan. 17, 1951.

(226 P. 2d 998.)

Carder & Carder, Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, P. J.   The plaintiff in error Carl Walker, defendant below, was charged in the district court of Kiowa county, Oklahoma, by information, with the crime of grand larceny of two turkeys.   The crime was alleged to have been committed on or about September 15, 1948. In substance, the information charged the defendant, Carl Walker, and Jack Walker, jointly, with unlawfully, willfully, wrongfully, intentionally, and feloniously, by stealth and fraud, taking, stealing and carrying away without the permission and consent of Lahoma Hicks, owner of said turkeys; and that said turkeys were taken with the felonious intent on the part of the said Walker to convert the same to his own use and benefit.   A severance was granted Carl Walker and he was tried by a jury.   The jury returned a verdict of guilty and fixed defendant Carl Walker's punishment at a fine of $75.

The record discloses that about 5:30 p. m., on the day of the alleged crime, the defendant, his brother Jack Walker, and J. N. Parsons, purchased some shotgun shells from a Mr. Brewer, a hardware dealer, for the purpose of going hunting.   Thereafter it appears that they drove out on the highway east of Mountain Park, Oklahoma. The defendant, Carl Walker, placed himself out on the left front fender in order that he might better ascertain the presence of game and be in a better position to shoot the same.   The record discloses that he was supposed

to have shot at some scissortails, sparrows, and rabbits on the way. It is interesting to note, however, proof on this point is not at all convincing. Only the parties involved testified to such shooting. No other persons along the highway were brought in to testify to such. It appears further that Albert and Lahoma Hicks lived about two and a half miles east of Mountain Park. When the defendant reached a point about a half mile from the Hicks home and nearly to Jesse Bates' place, the defendant fired three shots into a drove of turkeys belonging to Mrs. Hicks just inside of the fence on the Hicks farm. Mrs. Hicks said that more than three of the turkeys were missing. The defendant admitted shooting two of Mrs. Hicks' turkeys, going over the fence and getting the turkeys. It appears that Jesse Bates, attracted by the shooting, saw the defendant pick up the turkeys and take them to his car. In this defense witnesses Jack Walker and J. N. Parsons corroborate Bates. The defendant first denied any knowledge of "any damned turkeys," then he admitted to Sheriff E. O. Peters and Assistant County Attorney Cunningham he shot the turkeys and put them in the back of his car. In addition, Sheriff Peters said there were blood and turkey feathers in the turtleback of the defendant's car. Moreover, Mrs. Hicks saw the defendant, who was an old acquaintance, drive by as she was proceeding to the scene of the shooting, and recognized him as one of the persons involved in the shooting of the turkeys. The defendant, she said, waved at her as he went by.

The defendant offered as a defense that he was drunk and was not responsible for his acts. He said he remembered shooting the turkeys and getting them but did not remember putting them in the back of his automobile. He further testified he offered to pay the damages by

reason of the killing of the turkeys. This he offered to do, though not himself, but through other parties. He said he had never been convicted of a crime. He said he was in the grocery business, but that he did not sell or eat the turkeys or anything like that, but he did not tell what disposition was made of the turkeys. It appears he first denied shooting the turkeys when confronted by Mr. Peters, the sheriff, and admitted it only after J. N. Parsons admonished him he had better admit it or he would get them all in trouble. On the issue of his intoxication Mr. J. N. Brewer, hardware dealer, who sold the defendant the shotgun shells, testified the defendant appeared sober at the time the purchase of the shells was made. The defendant himself said that after purchasing the shells he went by home and took a drink of liquor, leaving immediately thereafter for the hunting excursion which lasted only about 30 minutes. No one saw him take a drink. Hence in this he was not corroborated. J. N. Parsons said he thought the defendant was pretty well intoxicated when he shot the turkeys but did not testify, however, that he was so intoxicated he was unable to appreciate the nature of his act. The defendant's brother Jack Walker testified in substance as to whether Carl Walker was drunk, "I think he was. I am pretty sure he was". It is important that neither of these witnesses testified the defendant was so drunk he did not know what he was doing or that he was in what amounted to an unconscious state of mind. The defendant himself admitted a clear recollection as to all the essential elements necessary to a completed act of the larceny of the turkeys. He testified he did not remember putting the turkeys in the turtleback of the car. The evidence that he put the turkeys in the turtleback of the car in no way constituted an element of the

larceny of the turkeys. The act of the larceny had been completed at the time they were placed in the back of the car. The defendant's evidence as to his not knowing what he was doing is certainly not convincing. It does not support his claim of drunkenness to the point of irresponsibility or unconsciousness. Moreover, his first denial of not knowing anything about "any damned turkeys," and then his admission that he shot and took them, weakens his claim of lack of responsibility and of intent. This combined with the fact he concealed the turkeys and disposed of them without an offer to restore them was evidence from which the jury could draw the conclusion of intent to appropriate the turkeys to be his own use and benefit. It is well to note, also, that only after this prosecution was instituted the defendant through other parties offered to make restitution by payment of damages in the loss of the turkeys. At no time did he ever account for the disposition of the turkeys. His failure so to do is a further cloud upon his defense. It is apparent that neither the facts nor the circumstances support the defendant's contention of drunkenness to the point of unconsciousness of what he was doing at the time. Such is the factual situation of the case. The prosecution was brought under the provisions of Title 21, § 1719, O.S.A. 1941, reading in part as follows, to wit:

"Every person who shall take, steal and carry away any domestic fowl, or fowls, * * * shall be guilty of grand larceny, regardless of the value thereof, and upon conviction shall be punished by imprisonment in the penitentiary not exceeding five years, or by fine not exceeding two hundred dollars, or by confinement in the county jail not exceeding two months, or by both such fine and imprisonment."

The defendant assigns as his principal contention the refusal of the trial court to give his requested instructions Nos. 1, 2 and 3. The said instructions are as follows, to wit:

"1. You are instructed that the intention on the part of the defendant to steal in the commission of the act charged is the gist of the crime of larceny and must be proved by the state. A person who from *drunkedness* has lost his understanding cannot, in contemplation of law, be accountable for such intention, or said to have the same, therefore if you find from the evidence that the defendant was so drunk as to be unable to form any intention to steal, or if you have a reasonable doubt thereon, at the time the turkeys were taken, then he should be acquitted, and your verdict should be not guilty, unless you are satisfied and find the further fact that he had formed the intention to steal while in possession of his reasoning powers.

"2. You are instructed that the intention of the defendant in the commission of the act charged, which is the taking of—turkeys, is the gist of the crime of larceny. A person who from *drunkedness* has lost his understanding cannot in contemplation of law be accountable or said to had such necessary intention to steal, therefore if you find from the evidence that the defendant was so drunk as to be unable to form any intention at the time he took the turkeys he should be acquitted and your verdict should be not guilty, unless you are satisfied of the further fact that he has formed the intention to steal while in possession of his reasoning powers.

"3. You are further instructed, that regardless of your finding on the issue of *drunkedness* and intoxication, that it is incumbent upon the prosecution to prove as a material and necessary element of the crime charged that the defendant, Carl Walker, at the time he took the turkeys in question, took them with the intent to steal them, and in this connection if you find and believe from the evidence, or have a reasonable doubt thereon, that the defendant had no intention to steal, but took the turkeys

for the purpose of concealing the act that he had committed in shooting them, then you are instructed that the defendant is not guilty of the crime charged, and in that event he should be acquitted and your verdict should be not guilty."

The defendant cites in support of instructions 1 and 2 the case of Huffman v. State, 24 Okla. Cr. 292, 217 P. 1070, wherein the rule is stated:

"Voluntary intoxication of a defendant is never to be considered by the jury for the purpose of justifying or excusing the commission of a crime which has in fact been committed.

"Larceny involves a felonious intent, and, if one takes property while so much under the influence of intoxicating liquor as not to know what he is doing, he will not be deemed to have taken the property with felonious intent.

"When one takes the property of another, to make it grand larceny a felonious intent must be shown, and while this may be inferred from the character of the taking, the defendant may show that he was unconscious of what he was doing at the time, and too drunk to form or have a felonious intent.

"On the trial of an information for grand larceny, the mental condition of the defendant, from the effect of intoxicants, is for the jury upon the question of felonious intent."

He further cites the case of Derrisaw v. State, 29 Okla. Cr. 377, 234 P. 230; Jamison v. State, 53 Okla. Cr. 59, 7 P. 2d 171. These cases lay down and follow the rule announced in the Huffman v. State case, supra. But the said cases are not controlling. In the cases cited and relied on the evidence clearly supported the contention of intoxication, such a state of intoxication that the defendants could not know what they were doing. Such is not the case herein. It is not error for the court to re-

fuse an instruction not supported by the evidence. Herein neither the defendant's acts or conduct nor his testimony sustains the contention he was intoxicated to such a state that he was unconscious of what he was doing at the time he shot and took the turkeys. Mere evidence of intoxication is not a defense to the crime of larceny. Hence it was not error for the trial court to refuse to give his requested instructions Nos. 1 and 2. In Sigler v. State, 54 Okla. Cr. 353, 21 P. 2d 1073, this court said:

"It is not error for the trial court to refuse a special instruction requested by a defendant, although it may be a correct statement of law, where such instruction is not applicable to the evidence, or where the question presented is covered by another instruction."

In Moore v. State, 75 Okla. Cr. 222, 130 P. 2d 114, it was said:

"Court did not err in refusing requested instruction that 'if jury should believe defendant was intoxicated to the extent of lacking the mental capacity to form a premeditated design to take life, then he should only be convicted of manslaughter in the first degree,' as there is lack of evidence in the record from which the jury could find that the defendant was so intoxicated."

We therefore conclude the contention as to the defendant's requested instructions Nos. 1 and 2 is without merit.

The defendant next contends that the trial court erred in refusing his instruction No. 3. An examination of the court's instructions Nos. 4 and 5 discloses that they substantially covered the matter requested in defendant's requested instruction No. 3. It has been repeatedly held that where the instructions of the court fairly and impartially cover the issues in the case, it is not error to refuse to give requested instructions covered

by the general instructions. Bourns v. State, 57 Okla. Cr. 377, 48 P. 2d 353.

Finally the defendant contends that the trial court erred in giving instruction No 2 reading as follows, to wit:

"You are further instructed that the statutes provide that: 'No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition.'" (Title 21, § 153, O.S.A. 1941.)

Said instruction is in the language of the statute. The defendant complains that without clarification or explanation, this instruction amounted to advising the jury that voluntary intoxication has no bearing on the guilt or innocence of the defendant. It appears from the record that no objection was interposed or exception saved to the giving of this instruction. In Dooley v. State, 82 Okla. Cr. 243, 168 P. 2d 651, 652, it was said:

"Where no objection or exception is taken to instructions given by the court, it constitutes a waiver of. error unless an examination discloses that by reason of the instructions given there was fundamental error or the defendant was deprived of a substantial right."

The foregoing instructions in light of the record could not constitute fundamental error. Only in such case wherein the defendant was deprived of a substantial right can such delayed objection be sustained. Finding no reversible error in the record, the judgment and sentence herein imposed is accordingly affirmed.

JONES, P. J., and POWELL, J., concur.