## W. F. LEMMONS v. STATE.

No. A-6209. Opinion Filed March 29, 1928.
(265 Pac. 652.)

Warren & Warren, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J. Appellant, W. F. Lemmons, was tried and convicted of the crime of manslaughter in the first degree for the killing of Flin Harlow, on the 25th day of September, 1925. The jury fixed his punishment at imprisonment in the penitentiary for a term of 10 years. Judgment was rendered in accordance with the verdict, and he appeals.

It appears from the record that no objections were taken on the trial to rulings of the court, no instructions were requested by the defendant, and no exceptions were taken to the instructions given by the court to the jury, but upon the argument of this appeal it was contended that the judgment should be reversed because the evidence was insufficient to sustain the verdict of the jury.

It appears that appellant, aged about 60 years, lived five or six miles north of Hugo, upon a farm; that on the day of the tragedy nine or ten white men and two or three colored men were at the defendant's place, some were playing cards, and there was some drinking going on; that

just before sundown an altercation arose between appellant and the deceased in the house, and in the scuffle appellant pulled his gun, an automatic pistol, and struck the deceased over the head with it.

Henry Black took the pistol from appellant, who then picked up a shotgun and went out the front door, saying that he was going to kill the deceased. A minute or two later the deceased went out through the kitchen door and appellant shot him with the shotgun, the charge passing through his left arm and into his body under the arm, killing him almost instantly. The deceased, a man about 30 years old, was unarmed. There were at least a dozen men present when the fatal shot was fired. Six or seven of the eyewitnesses testified for the state.

A. M. Spear, sheriff, testified that he went out to the place of the killing that night and examined the body and found a deep wound over the left ear and a gunshot wound under the left arm.

For the defense, Jess Spiegel testified that he was appellant's nephew; that he went to appellant's house that afternoon and Flin Harlow, the deceased, was with him; that a difficulty arose between appellant and the deceased, and, assisted by Henry Black, witness separated them; that in the scuffle Henry Black took appellant's pistol from him and dropped it on the floor, then Arthur Hopper picked up the pistol and ran out the door with it; that when appellant got up he asked where the gun was, then went to the foot of the bed, picked up his shotgun and went out the front door, saying: "I am going to kill the son-of-a-bitch." Witness then told the deceased not to go out, that his uncle was going to shoot. The deceased then went to the kitchen door and his uncle told him if he came out he would kill him; that he was holding the deceased, but he pulled loose and went out the kitchen door and was walking towards his uncle when he was shot.

As a witness in his own behalf appellant testified that Flin Harlow came into the house and grabbed hold of him and was using awful bad language; that he asked him to turn him loose and go out of the house and he would not do it; that some of those present took the deceased off of him, then he got up and picked up his shotgun and went out and started towards the spring, and the deceased came out through the kitchen door and started to head him off; that he told him to stop, not to come any closer, and he just kept coming; that he was afraid of him, and, knowing that if he got hold of him he would kill him, he fired the shot, but he did not want to kill him.

His cross-examination showed that he had been convicted of shooting a man in Texas, for which he had served a term in the Texas penitentiary.

Our Penal Code provides that homicide is justifiable when committed by any person in resisting any attempt to murder such person or to commit any felony upon him, or when committed in the lawful defense of such person, when there is a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished. Section 1754, C. S. 1921.

In order to justify the assault and to slay an assailant, within the meaning of this section, there must be an apparent design on the part of such assailant to either take the life of the person assaulted or the infliction of some great personal injury, and, in addition thereto, there must be reasonable ground for believing that there is imminent danger of such design being accomplished. The use of a deadly weapon is justifiable for the purpose only of preventing an unlawful and violent attack on one's person of such a nature as to produce a reasonable expectation or fear of death or great bodily injury about to be inflicted. Lee v. State, 33 Okla. Cr. 370, 244 P. 455.

The bare belief of one assaulted that he is about to suffer death or great personal injury will not, of itself, justify him in taking the life of his adversary. There must exist reasonable ground for such belief at the time of the killing, and the existence of such ground is a question of fact for the jury. Hunt v. State, 29 Okla. Cr. 255, 233 P. 506.

In the case of Rogers v. State, 12 Okla. Cr. 456, 158 P. 637, we said:

"The law places too high an estimate upon human life to justify it being snuffed out by a mere whim of either cowardice or anger. And where there is nothing in the facts to justify the accused in believing, at the time of the homicide, that he was in danger of great bodily harm or his life was in imminent peril, the plea of self-defense is of no avail."

Appellant, from all the record discloses, had a fair and impartial trial, and we think that he ought to be thankful that the jury dealt so leniently with him.

Finding no error in the record, the judgment appealed from is affirmed.

EDWARDS and DAVENPORT, JJ., concur.