**EASTERLING v. STATE.**
No. A–11899.

Criminal Court of Appeals of Oklahoma.

Feb. 17, 1954.

Carloss Wadlington, King & Wadlington, Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Judge.

The defendant Lillian Easterling was charged by an information filed in the District Court of Pontotoc County with the crime of murder, it being alleged in the information that she made an assault upon one Eugene Carnell with a pocket knife on December 22, 1951, by stabbing the said Eugene Carnell, and that as a result of the wounds thus inflicted he died on January 1, 1952. The jury returned a verdict finding the defendant guilty of manslaughter in the first degree and fixed the punishment at confinement in the penitentiary for six years. Judgment and sentence was pronounced in conformity to the verdict of the jury and defendant has appealed.

The evidence showed that the defendant was a full blood Chickasaw Indian, 41 years of age. For some months prior to December 22, 1951, she and the deceased had lived together as man and wife, although the defendant could not be legally married to him because she had never been divorced from a former husband. The relationship between defendant and deceased was a turbulent one. Both of them became intoxicated on many occasions and on the date of the fatal altercation they had just finished drinking a pint of whiskey shortly before the stabbing occurred.

They were living at the Wheat Hotel. Mrs. Bond, manager of the hotel, testified that on the night of the fatal difficulty she heard loud talking in the room occupied by defendant and the deceased and heard the defendant say, "All you know how to do is just pull hair." That soon after that, deceased came to her room and asked for the return of some rent money which he had paid and stated that he wanted to vacate the room as he was going to leave the defendant. That defendant followed deceased to the manager's room and asked Mrs. Bond not to return the money and deceased said to defendant, "You get back there," and that the parties then returned to their room. Shortly thereafter, deceased returned and told the witness, "She got me." There was a small spot of blood on the shirt of the deceased, and defendant came into the room at that time and cut the deceased on the arm. That defendant had a large knot where she had been hit in the forehead and her hair was down in her face and her clothing had been pulled around as if she had been in a scuffle. That the witness had seen the deceased beat the defendant on two other occasions.

That once he had beaten her so badly that she could not see and her lips were cut.

A policeman testified that he went to the Wheat Hotel pursuant to a call and found Eugene Carnell and the defendant in a room together. That Carnell was sitting on the bed and had a cut place on his arm and another on his chest. That Carnell said he and the defendant had been having trouble and defendant had cut him but it was nothing serious, but the officer called an ambulance and had Carnell taken to a hospital. Defendant was arrested and after she was placed in jail the officers returned to the room and found a pocket knife under the covers of the bed. The longest blade, which had some blood on it, was about 2½ inches in length.

Dr. E. M. Gullatt of Ada testified that he was called to the hospital to attend Carnell on the evening of December 22, 1951. That a knife wound in the chest did not penetrate the lung or the heart of the deceased but the deceased was suffering from shock. That the man died on the tenth day thereafter because his kidneys did not function. That in his opinion the knife wound produced the shock which caused the kidneys to stop functioning and the man died as a result of uremic poisoning.

The defendant testified that the deceased had beat upon her on many occasions and one time had cut her on her finger with his pocket knife. She exhibited a scar to support that testimony. That the deceased not only drank alcoholic liquors, but was addicted to the use of narcotics. That he took morphine and also something they called "goof balls" which would make him crazy. That on the night in question deceased had followed her to a small cafe where she was buying a hamburger, and asked for money. That she gave him $2. That later when they went upstairs, he tried to take $5 away from her and cursed and abused her. That he grabbed her by the hair and beat her on her head and back and forehead with his fists. That he also choked her and said he was going to kill her. That she saw the pocket knife of the deceased laying open on the dresser

and grabbed it and stabbed him with it to get him loose from her. That she did not intend to kill him but only struck him to stop him from choking her or causing her great bodily harm or killing her.

Other witnesses for the defendant testified to seeing the deceased give the defendant beatings at other places and on other occasions.

We shall consider the assignments of error in the order in which they were presented in the brief of the defendant. It is contended that the court erred in giving instruction No. 8, as follows:

"The law of self defense is purely a rule of necessity. There must be some real or apparent necessity for so doing before any person has the right to use any weapon to injure another person. The person who so uses a weapon and claims that such use was in self defense must at the time of the use of such weapon have honestly believed that it was necessary to do so in order to protect himself or herself from serious injury and *no person has the right to use a dangerous weapon merely to repel a simple assault without weapons.* It is only in cases where a person reasonably and in good faith fears that he or she is about to receive severe injury by the wrongful attack of an adversary that he or she has the right to use a dangerous weapon and to inflict dangerous wounds therewith in self defense." (Italics ours.)

There was no contention at the trial that the deceased was using any weapon when he was allegedly assaulting the defendant, but it was the contention of defendant that deceased was striking her with his fists and choking her to such an extent that she became in fear of being killed and that she reached over and got the open pocket knife of the defendant laying on the dresser and stuck him merely to make him "turn loose of her." It was a tragedy that death ensued because according to the testimony of the attending physician the knife wounds struck no vital organ and ordinarily would not have been serious. How-

ever, it threw the deceased into a state of shock from which he never recovered.

Counsel for the defendant objected and excepted to the giving of the above instruction. Its importance was emphasized by the assistant county attorney in his argument to the jury. The only instruction read to the jury by the prosecutor in his argument was instruction No. 8, and when he argued that the defendant had no right to use a dangerous weapon to repel an assault without weapons, the record disclosed the following occurred:

"By Mr. Wadlington: Now, we object to that being called to the attention of the jury because it is an error in the instructions, and it is not the law * * *.

"By Mr. Stanfield: It is the law * * *.

"By Mr. Wadlington: It is not the law, and I now ask the court to correct that to say, '* * * except that unless a person honestly believes that he or she is in imminent danger of sustaining serious bodily harm or death,' in accordance with the other instructions given in this case.

"By The Court: The court instructs the jury that they will take and consider the instructions all together and not separately; and the objection is overruled.

"By Mr. Wadlington: Exception."

■■ In an ordinary case the disputed instruction might be a correct statement of the law, but it cannot be said to be true in all cases where fists are used in making an attack upon another that the person attacked would not be legally justified in the use of a deadly weapon. The question as to whether the person assaulted is legally authorized to use a deadly weapon in repelling his assailant is determined by whether the assault made upon him is of such a character as to excite his fears, as a reasonable man, of danger to his life or great bodily harm. Gransden v. State, 12 Okl.Cr. 417, 158 P. 157. There may be such a difference in the size of the parties involved or disparity in their ages or phys-

ical condition which would give the person assaulted by fists reasonable grounds to apprehend danger of great bodily harm and thus legally justified in repelling the assault by the use of a deadly weapon. It is conceivable that a man might be so brutal in striking a woman with his fists as to cause her death.

■ In Lemmons v. State, 39 Okl.Cr. 383, 265 P. 652, the rule followed in Oklahoma is stated:

"Under Comp.St.1921, § 1754 [21 O.S.1951 § 733], to justify homicide, there must be apparent design on deceased's part to take life of person assaulted or inflict some great personal injury, and reasonable ground for believing that there is imminent danger of such design's being accomplished, and use of deadly weapon is justifiable for purpose only of preventing unlawful and violent attack on one's person, of such nature as to produce reasonable apprehension of death or great bodily injury."

It would have been better for the disputed words to have been omitted from the instruction to avoid any confusion they might create in the minds of the jury, but if they are inserted in an instruction it should read substantially as follows:

"* * * and no person has the right to use a dangerous weapon to repel a simple assault without weapons unless the assault is of such character as to excite the fears of the accused as a reasonable person of danger to her life or great bodily harm."

We think the correct rule is set forth in 40 C.J.S., Homicide, § 131, as follows:

"Ordinarily the use of a deadly weapon is not justifiable in repelling an attack without a weapon, an attack which is of a trifling character and which manifests no purpose or intention on the part of the assailant to inflict any serious injury, a slight, simple, or non-felonious assault, or an assault with blows from the hand or fist or with insulting words and blows. However, it is not true as a matter of law that in

all cases an attack with the fists alone or an attack by an unarmed man does not justify accused in the use of a deadly weapon in such manner as to produce death; there may be other circumstances, such as the very violence of the attack or a great disparity in the age or physical ability of the persons, which give accused reasonable ground to apprehend danger of death or great bodily harm and justify him in employing a deadly weapon in self-defense."

This instruction as worded appears to us in effect to deny the accused the plea and right of self-defense, which the evidence on her behalf tended to establish.

■ It is next contended that the court erred in giving instruction No. 18. This instruction is identical in wording to the one construed by this court in the case of Wilson v. State, Okl.Cr., 250 P.2d 72. In that opinion we held that the use of a double negative in the instruction might have confused the jury and caused them to place the burden of proof upon the defendant. Wilson v. State, supra, was an appeal from the same court from which this appeal was taken, but the opinion in Wilson v. State had not been rendered at the time of the trial of the instant case so that the trial court would have the benefit of our views pertaining to this instruction. While we do not believe that this instruction was sufficiently erroneous under the circumstances of this case standing alone to have been reversible error, yet it is ambiguously worded and this error, when considered together with erroneous instruction No. 8, is sufficient to require a reversal of the judgment of conviction. It cannot be said that the accused has had a fair and impartial trial where there has been an erroneous statement of the law upon a vital issue of the case.

■ There are many assignments of error pertaining to the admission or rejection of evidence but an examination of the record discloses that the court's ruling was entirely proper in every instance to which our attention was directed. As to the alleged error of the court in permitting the county attorney to cross-examine one of the witnesses for the defendant pertaining to her convictions for violations of the municipal ordinances in the city of Ada concerning the possession and sale of whiskey, this court has held in Hathcox v. State, Okl.Cr., 230 P.2d 927, 930:

"County attorney may inquire of a witness on cross-examination as to convictions in police court where such convictions involve offenses under the state law and are crimes within contemplation of statute. 12 O.S.1941 § 381."

■ We can find nothing improper in the argument of the prosecutor to which objection is made. The argument was very forceful and undoubtedly affected the jury, but we thoroughly approve of the county attorney using his very best efforts and most forceful argument in presenting the State's side of the criminal case. A vigorous presentation of the State's case will always be looked on with favor in this court, unless it is clearly apparent that the prosecutor is going far afield and injecting matters into the argument that are wholly outside of the record for the sole and only purpose of creating passion and prejudice against the individual on trial.

Because of the giving of erroneous instructions as hereinabove pointed out, the judgment and sentence of the District Court of Pontotoc County is reversed and the case is remanded for a new trial.

POWELL, P. J., and BRETT, J., concur.